IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EMPLOYER TRUSTEES OF WESTERN PENNSYLVANIA TEAMSTERS AND EMPLOYERS WELFARE FUND, WILLIAM J. DILLNER, M. E. DOUTT, ROBERT JACKSON, DOUGLAS LONGENETTE, RAYMOND MILLER, ROBERT J. PERKINS**<br><br>          Plaintiffs,<br><br>     v.<br><br>**UNION TRUSTEES OF WESTERN PENNSYLVANIA TEAMSTERS AND EMPLOYERS WELFARE FUND, KEITH FRANK, CHARLES GASTON, JOSEPH A. MOLINERO, KEVIN SCHMITT, SCOTT STANLEY, MICHAEL E. ZOBRAK,**<br><br>          Defendants. | CIVIL ACTION NO. 19-388<br><br>JUDGE JOY FLOWERS CONTI |

## MEMORANDUM OPINION

### I.     Introduction

Pending before the court is the Motion to Dismiss for Failure to State a Claim filed by defendant Michael E. Zobrak. (ECF No. 26). This action was initiated by the Employer Trustees of the Western Pennsylvania Teamsters and Employers Welfare Fund, M.E. Doutt, Robert Jackson, Raymond Miller, Robert J. Perkins, Douglas Longenette, and William J. Dillner ("Plaintiffs" or "Employer Trustees"). (ECF No. 1.) In their complaint, plaintiffs name as defendants the Union Trustees of the Western Pennsylvania Teamsters and Employers Welfare Fund, Keith Frank, Charles Gaston, Joseph A. Molinero, Kevin Schmitt, and Scott Stanley (the

1

"Union Trustees") and Michael E. Zobrak ("Zobrak"). (ECF No. 1.) On September 6, 2019, Zobrak filed a motion to dismiss the claims against him, under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim on the basis, among others, of arbitral immunity. (ECF No. 26.) On September 27, 2019, plaintiffs filed their response and brief in opposition (ECF Nos. 36, 37), and, on October 14, 2019, Zobrak filed a reply to plaintiffs' response in opposition. (ECF No. 43.) The motion to dismiss is fully briefed and ripe for decision by this court.

## II.     Background[1]

Plaintiffs are the employer representatives on the Board of Trustees of the Western Pennsylvania Teamsters and Employers Welfare Fund (the "Fund"). (ECF No. 1 ¶ 1.) The Fund operates pursuant to the Agreement and Declaration of Trust, amended and restated as of January 1, 2000 (the "Trust Agreement"). (Id. ¶ 13.) The Trust Agreement provides for the appointment of five Employer Trustees and five Union Trustees (collectively, the "Trustees") to administer the Fund. (Id. ¶¶ 2-3.)

The Trust Agreement provides that an action taken by the Trustees must be approved by a majority of the votes cast at a Trustee meeting. (ECF No. 1-2 at 24-25.) The Employer and Union Trustees are each permitted one vote. (Id.). In the event of a deadlock, the Trustees may agree on an impartial umpire to decide the dispute in question through arbitration. (ECF No. 1-2 at 25.) In the event that the Trustees cannot agree on an impartial umpire, any Trustee may petition the United States District Court for the Western District of Pennsylvania to appoint one. (Id.) The Trust Agreement gives the impartial umpire the authority to interpret the provisions of Trust Agreement, as well as to hear and resolve disputes arising from deadlocks. (ECF No. 1 ¶ 32.)

---

[1] The Background section is taken from the factual allegations set forth in the complaint viewed in the light most favorable to the nonmoving party. U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002).

On December 3, 2014, an Employer Trustee proposed that the Fund compensate the Trustees for attendance at sub-committee and monthly meetings, at a rate of $600.00 per meeting. (Id. ¶ 33.) The motion resulted in a deadlock ("Compensation Deadlock"), with two Employer Trustees voting in favor and two Union Trustees voting against. (Id. ¶ 34.) A subsequent proposition by the Union Trustees declaring that the Trust Agreement requires Employer Trustees to be full-time employees of a contributor to the Fund, also resulted in a deadlock ("Trustee Appointment Deadlock"). (Id. ¶ 37.) The parties selected Zobrak to serve as the arbitrator to resolve both disputes. (ECF No. 1 ¶ 6.)

Plaintiffs allege that a prior iteration of the Trust Agreement, as amended in 1967, authorized "fees paid to the Trustees for attendance at meetings." (Id. ¶ 20.) The Trust Agreement, as amended in 1977 and in its current operative form, does not include the 1967 provision authorizing payment for attendance at meetings. (Id. ¶ 21.) Charles Streiff, counsel for the Fund since 1975, testified during the arbitration proceedings before Zobrak that the 1977 amendment to the Trust Agreement was not intended to limit the Trustees' ability to pay compensation for attendance at meetings. (Id. ¶¶ 15, 42-44.) On March 7, 2019, Zobrak issued a decision deciding 1) in favor of the Employer Trustees with respect to the Trustee Appointment Deadlock, and 2) in favor of the Union Trustees with respect to the Compensation Deadlock ("Arbitration Award"). (ECF No. 1 ¶¶ 48-50.)

In the Arbitration Award, Zobrak framed the question to be decided as "whether the deadlocked position submitted by the parties should be resolved in favor of the party advancing the addition/change to the Trust Agreement[.]" (ECF No. 1-3 at 6.) In the part of his decision concerning the Compensation Deadlock, Zobrak emphasized that the provision in the 1967 Trust Agreement permitting payment for meeting attendance is not included in the operative iteration

3

of the Trust Agreement. (ECF No. 1-3 at 16-17.) Zobrak interpreted the term "reimbursement" in a way that did not allow the Trustees to authorize compensation for attendance at Trustee meetings. (ECF No. 1 ¶¶ 51, 67.)

Plaintiffs raise the following claims in their complaint: 1) Zobrak lacked jurisdiction to render the Arbitration Award because he improperly framed the question to be decided; 2) the Arbitration Award did not "draw its essence" from the provisions of the Trust Agreement and record presented during arbitration; 3) the Arbitration Award represents Zobrak's own brand of justice; 4) Zobrak breached his fiduciary duty under ERISA by failing to give proper weight to plaintiffs' evidence; and 5) Zobrak's decision renders any previous authorization of compensation for attendance at Trustee meetings a potential breach of fiduciary duty. Plaintiffs ask the court to vacate the Arbitration Award with respect to the Compensation Deadlock, issue a declaratory judgment clarifying the effect of the Arbitration Award, and to decide the Compensation Deadlock in favor of the Employer Trustees, or, in the alternative, appoint a new arbitrator to decide the issue.

### III.   Standard of Review

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544,

555 (2007). A "formulaic recitation of the elements of a cause of action will not do." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.... Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. (quoting Twombly, 550 U.S. at 556) (internal citations omitted).

The Court of Appeals for the Third Circuit has instructed that "a court reviewing the sufficiency of a complaint must take three steps." Connelly v. Lane Constr. Corp., 809 F.3d 780, 787 (3d Cir. 2016). The court of appeals explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Iqbal, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. See also Burtch v. Milberg Factors, Inc., 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth."(citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

Id. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (citing Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007)). A plaintiff must set forth "sufficient factual allegations to raise a reasonable expectation that discovery will reveal

5

evidence" of the elements of the claim for relief. Connelly, 809 F.3d at 789; Trzaska v. L'Oreal USA, Inc., 865 F.3d 155, 162 (3d Cir. 2017).

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010). "Generally, 'to the extent that [a] court considers evidence beyond the complaint in deciding a 12(b)(6) motion, it is converted to a motion for summary judgment.'" Colbert v. Mercy Behavioral Health, 845 F.Supp.2d 633, 637 (W.D. Pa. 2012) (quoting Anjelino v. New York Times Co., 200 F.3d 73, 88 (3d Cir.1999)). "However, in resolving a 12(b)(6) motion to dismiss, a court may look beyond the complaint to matters of public record, including court files and records, and documents referenced in the complaint or are essential to a plaintiff's claim which are attached to a defendant's motion." Id. (citing Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir.1993)).

## IV. Discussion

### A. Arbitral Immunity General Standards

It is well settled that a "judge cannot be sued civilly for any act which he does in the performance of his duties, even if the act was deliberate and malicious." Cahn v. Int'l Ladies' Garment Union, 203 F. Supp. 191, 193 (E.D. Pa. 1962), aff'd, 311 F.2d 113 (3d Cir. 1962) (citing Bradley v. Fisher, 80 U.S. 335, 347 (1872)). The Third Circuit Court of Appeals has extended judicial immunity to quasi-judicial officials, including arbitrators. Cahn, 311 F.2d at 114-15. "Arbitrators are protected from liability for acts which arise out of their arbitral functions and under their jurisdiction during the course of contractually agreed-upon arbitration hearings." Garland v. U.S. Airways Inc., 270 F. App'x 99, 104 (3d Cir. 2008) (dismissing claims

of bias and conspiracy asserted against an arbitrator because "the allegations concern[ed] conduct that would still fall within the arbitral process"); Sathianathan v. Pacific Exch., Inc., 248 F. App'x 345, 347-48 (3d Cir. 2007); Cahn, 203 F. Supp. at 194 (dismissing plaintiff's allegations of conspiracy because they were based upon conduct committed in the defendant's capacity as an arbitrator).

Judicial immunity, as extended to arbitrators, may be overcome in two circumstances. "First, 'a judge is not immune from liability for nonjudicial actions, *i.e.,* actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.'" Garland v. US Airways, Inc., Civ. Action No. 05-140, 2006 WL 2711652, at *4 (W.D. Pa., Sept. 21, 2006), aff'd, 270 F. App'x 99 (3d Cir. 2007) (quoting Mireles v. Waco, 502 U.S. 9, 11-12 (1991)). "Furthermore, there is caselaw indicating that, where an arbitrator is concerned, immunity attaches even where a litigant calls the arbitrator's jurisdiction into question." Garland, 2006 WL 2711652, at *4 (collecting decisions).

### B. Application of Arbitral Immunity

#### 1. General Exceptions

Plaintiffs do not contest that Zobrak was properly appointed as an impartial umpire, pursuant to the Trust Agreement, to decide the Compensation Deadlock. Under the doctrine of judicial and quasi-judicial immunity, therefore, Zobrak is immune from civil liability unless one of the two exceptions apply. Garland, 2006 WL 2711652, at *4. With respect to the first exception, all the claims that plaintiffs assert in their complaint are based entirely on action taken by Zobrak in his capacity as an arbitrator. The first exception to arbitral immunity, therefore, does not apply here. Id.

7

With respect to the second exception, plaintiffs contend that Zobrak did not have jurisdiction to decide the Compensation Deadlock because he improperly framed the issue to be decided as whether "the deadlocked position submitted by the parties should be resolved in favor of the party advancing the addition/change to the Trust Agreement[.]" (ECF Nos. 1 ¶¶57-63, 1-3 at 6.) The Trust Agreement expressly provides that an arbitrator deciding a deadlock "shall have no jurisdiction or authority to change or modify the provisions of" the Trust Agreement. (ECF No. 1 ¶32.) Plaintiffs concede, however, that the Trust Agreement does grant an arbitrator the authority to interpret the Trust Agreement in order to resolve a deadlock. (Id.) Plaintiffs did not allege that Zobrak changed or modified a provision of the Trust Agreement in resolving the Compensation Deadlock. Plaintiffs simply allege that Zobrak's interpretation of the Trust Agreement is incorrect. Because Zobrak did have authority to interpret the Trust Agreement in order to resolve the Compensation Deadlock, plaintiffs did not allege any facts that would show directly or by reasonable inference that Zobrak acted "in the complete absence of all jurisdiction." Garland, 2006 WL 2711652, at *4 (emphasis added). The second exception to judicial immunity does not apply. To the extent that plaintiffs seek to impose civil liability, plaintiffs' claims against Zobrak are barred by the doctrine of arbitral immunity.

### 2. The Effect of ERISA on Arbitral Immunity

Plaintiffs argue that the doctrine of arbitral immunity has been abrogated by the Employees' Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 ("ERISA"). Plaintiffs contend that the ERISA subjects every individual who performs a fiduciary function to civil liability, and when an arbitrator functions as a fiduciary, as defined in 29 U.S.C. § 1002(21)(A),[2] arbitral immunity does not apply. Plaintiffs point to a particular provision, 29

---

[2] 29 U.S.C. § 1002(21)(A) provides that:

U.S.C. § 1401(a)(2), to suggest that the ERISA contemplates that an arbitrator may be subject to liability. That section provides that "[t]he plan sponsor may purchase insurance to cover potential liability of the arbitrator." 29 U.S.C. § 1401(a)(2). Plaintiffs' acknowledge, however, that § 1401(a)(2) only applies to mandatory withdrawal liability arbitration; there is no similar provision that applies to arbitration of a deadlocked motion.

The Third Circuit Court of Appeals has not addressed the specific issue whether the ERISA abrogated arbitral immunity. The Sixth Circuit Court of Appeals, however, did address this issue in International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America v. Greyhound Lines, 701 F.2d 1181 (6th Cir. 1983). In Greyhound Lines, the court concluded that an arbitrator, even under the ERISA, is "entitled to immunity from liability for damages, in any event, for those acts committed while performing in his official capacity as an arbitrator." Greyhound Lines, 701 F.2d at 1187. The court in *Greyhound Lines* relied upon the Supreme Court's decision in Pierson v. Ray, 386 U.S. 547 (1967), which held that common-law judicial immunity was not abolished by the passage of 42 U.S.C. § 1983. Greyhound Lines, 701 F.2d at 1187 (citing Pierson 386 U.S. at 554-55). In *Pierson*, the Supreme Court explained that "[t]he immunity of judges for acts within the judicial role is equally well-established, and we presume that Congress would have specifically so provided had it wished to

---

> Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 405(c)(1)(B).

29 U.S.C. § 1002(21)(A).

abolish the doctrine." Pierson, 386 U.S. at 554-55. The court in Greyhound Lines applied the same reasoning and explained that it did "not believe that ERISA was intended to abolish arbitral immunity in the absence of Congress having specifically so provided such an abrogation in the legislative record." Greyhound Lines, 701 F.2d at 1187. This court finds the Sixth Circuit Court of Appeals' decision in Greyhound Lines to be persuasive. As such, the doctrine of arbitral immunity covers Zobrak's actions as an arbitrator in resolving the deadlocked issues.

### 3. Plaintiffs' Request for Equitable Relief

Plaintiffs assert that, even if Zobrak's actions are covered by arbitral immunity, their claims for injunctive relief should not be barred. The Supreme Court has explained that "there is little support in the common law for a rule of judicial immunity that prevents injunctive relief against a judge." Pullium v. Allen, 466 U.S. 522 (1970). The court in Greyhound Lines expressly declined to consider "whether the doctrine of arbitral immunity would bar an action for equitable relief[.]" Greyhound Lines, 701 F.2d at 1187 n.10. There is some disagreement among federal courts that have addressed this issue about whether claims for equitable relief are barred by the doctrine of arbitral immunity. See Kemner v. District Council of Painting and Allied Trades No. 36, 768 F.2d 1115, 1119-20 (9th Cir. 1985) (holding that a claim raised against two arbitration committees was not barred by arbitral immunity because the plaintiff did not sue for damages); see also Trans World Airlines, Inc. v. Sinicropi, No. 93 Civ. 3094, 1994 WL 132233, at *1 (S.D.N.Y. Apr. 14, 1994) (holding that that the doctrine of judicial and quasi-judicial immunity did not bar the plaintiffs' claims for prospective injunctive relief against an arbitrator); but see New England Cleaning Services, Inc. v. American Arbitration Ass'n, 199 F.3d 542, 546 (1st Cir. 1999) (holding that claims against the American Arbitration Association for both damages and injunctive relief were barred by the doctrine of arbitral immunity); Tamari v. Conrad, 552 F.2d

778, 780-81 (7th Cir. 1977) (holding that plaintiffs' requests for injunctive and declaratory relief were barred by the doctrine of arbitral immunity).

The court need not decide whether the doctrine of arbitral immunity extends to requests for equitable relief because the claims for equitable relief against Zobrak raised in the complaint are futile. Plaintiffs' requests that the court vacate the Arbitration Award, clarify its effect, and resolve the Compensation Deadlock in plaintiffs' favor are not directed to Zobrak. Indeed, plaintiffs concede that Zobrak's involvement is not necessary to resolve this case or to grant that relief. (ECF No. 37 at 8.) Plaintiffs acknowledge that Zobrak has no ongoing authority over the disputes in issue and request only that, in the event that further arbitration proceedings are necessary, the court appoint a different arbitrator to resolve the Compensation Deadlock. Plaintiffs frame their request as one for injunctive relief directed to Zobrak; this request, however, is in fact a request to enjoin the court from re-appointing Zobrak. Because this court is not a party to this case, it cannot enjoin itself as a form of relief. In any event, there is no injunctive relief that can be granted against Zobrak because he does not have the authority under the Trust Agreement to re-appoint himself. In sum, plaintiffs did not allege any facts that support a claim for injunctive relief with respect to Zobrak.

### V.     Conclusion

For the foregoing reasons, Michael E. Zobrak's Motion to Dismiss (ECF No. 26) will be GRANTED. Because no relief may be granted against Michael E. Zobrak, any amendment would be futile, and the motion is granted without leave to amend. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1435 (3d Cir. 1997).

An appropriate order will be entered.

BY THE COURT,

Dated: July 28, 2020                                             /s/ JOY FLOWERS CONTI
                                                                 Joy Flowers Conti
                                                                 Senior United States District Judge