**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EMPLOYER TRUSTEES OF WESTERN PENNSYLVANIA TEAMSTERS AND EMPLOYERS WELFARE FUND, WILLIAM J. DILLNER, M. E. DOUTT, ROBERT JACKSON, DOUGLAS LONGENETTE, RAYMOND MILLER, ROBERT J. PERKINS** | ) ) ) ) ) ) ) ) | CIVIL ACTION NO.  19-388 CIVIL ACTION NO. 18-1112 SENIOR JUDGE JOY FLOWERS CONTI |
| Plaintiffs, | ) ) ) ) ) ) | |
| v. | ) ) | |
| **UNION TRUSTEES OF WESTERN PENNSYLVANIA TEAMSTERS AND EMPLOYERS WELFARE FUND, KEITH FRANK, CHARLES GASTON, JOSEPH A. MOLINERO, KEVIN SCHMITT, SCOTT STANLEY,** | ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**OPINION**

I.    **Introduction**

      Pending before the court are two civil actions between identical parties, premised on substantially the same series of underlying facts. Plaintiffs are the employer representatives serving on the Board of Trustees of the Western Pennsylvania Teamsters and Employers Welfare Fund (the "Employer Trustees") and defendants are the union representatives also serving on that

board (the "Union Trustees"). [1] Cross-motions for summary judgment were filed in both cases. The cross-motions for summary judgment are fully briefed and are ripe for decision. To explain the overlapping background of both cases and in the interest of efficiency, the court will address the cross-motions for summary judgment filed in both cases in a single opinion. First, the court will address the cross-motions for summary judgment in civil action number 19-388, and, second, will address the cross-motions for summary judgment in civil action number 18-1112, which were addressed by a magistrate judge in a report and recommendation dated April 22, 2020 (the "R&R"). (ECF No. 68.)

## II.     Civil Action Number 19-388

### A.  Procedural History

On April 5, 2019, the Employer Trustees filed a complaint asking the court to vacate partially an arbitration award and to issue a declaratory judgment with respect to an alleged breach of fiduciary duty. (ECF No. 1.) The Union Trustees filed their answer and asserted a counterclaim requesting that the court issue an order enforcing the arbitration award at issue. (ECF No. 13.) On September 20, 2019, both parties filed motions for summary judgment. The cross-motions for summary judgment are fully briefed and are ripe for decision by this court.

### B.  Factual Background[2]

The Western Pennsylvania Teamsters and Employers Welfare Fund (the "Fund") is a multi-employer welfare benefit plan, created pursuant to Section 302(c)(5) of the Labor

---

[1]     The current Employer Trustees are M.E. Doutt, Robert Jackson, Douglas Longenette, Raymond Miller, and Robert J. Perkins. William J Dillner is a former Employer Trustee who resigned his position as of December 1, 2018. The current Union Trustees are Keith Frank, Charles Gaston, Joseph A. Molinero, Kevin Schmitt, and Scott Stanley.

[2]     In all material respects, the factual background in this case is not disputed.

Management Relations Act ("LMRA") of 1947, 29 U.S.C. § 186(c)(5), and an "employee welfare plan" within the meaning of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1002(1), 1002(37). (ECF No. 54 ¶ 4.) The Fund provides certain health, welfare, and other employee benefits and does not provide pension benefits.

The Fund operates pursuant to the Agreement and Declaration of Trust (the "Trust Agreement") that was established on June 12, 1950, and most recently amended on January 1, 2000. (Id. ¶ 5.) The Trust Agreement provides for the appointment of 5 employer trustees and 5 union trustees (collectively the "Trustees") and sets forth the governing procedures for management of the Fund. In particular, the Trust Agreement provides that any action taken by the Trustees must be approved by a majority of the votes cast at a Trustee meeting. (ECF No. 1-2 at 24-25.) The Trustees have equal voting strength at all Trustee meetings and each Trustee is permitted one vote. (ECF No. 54 ¶ 17.) Due to the equal number of potential votes held by the Employer Trustees and Union Trustees, a vote on any given motion may result in a deadlock. In the event of a deadlock, the Trust Agreement provides the following procedure:

> In the event of a deadlock arising, the Trustees may agree upon an impartial umpire to break such deadlock by deciding the dispute in question. In the event of the inability of the Trustees to agree upon the selection of such impartial umpire within a reasonable period of time, then, either group of Trustees, or, in their failure to act, any Trustee, may petition the United States District Court for the Western District of Pennsylvania to appoint such impartial umpire. Such impartial umpire shall immediately proceed to hear the dispute between the Trustees and decide such dispute, and **the decision and award of such umpire shall be final and binding upon the parties.**

(ECF No. 54 ¶ 18 (emphasis added).)

If an impartial umpire is selected or appointed to resolve a deadlock, the Trust Agreement defines the scope of the umpire's authority. Section 3.15 of the Trust Agreement provides:

The scope of any such proceeding before such impartial umpire shall be limited to the provisions of this Trust Agreement and to the provisions of the rules, regulations and bylaws adopted by the Trustees and to the plan of benefits established by them. **The impartial umpire shall have no jurisdiction or authority to change or modify the provisions of this Trust Agreement … and such impartial umpire's review shall be limited to the issues out of which the deadlock arose.**

(Id. ¶ 19 (emphasis added).)

### 1. The Compensation Deadlock

During the Executive Session of the Trustees held on December 3, 2014, an Employer Trustee presented a motion that the Fund compensate those Trustees who legally qualify for compensation for attendance at Trustee meetings at a rate of $600 per Trustee Sub-Committee Meeting and monthly Trustee Meeting. The motion resulted in a deadlock (the "Compensation Deadlock"). (ECF No. 54 ¶ 39.) The Employer Trustees requested that the Compensation Deadlock be resolved in arbitration, i.e. by an impartial umpire. The Union Trustees refused to arbitrate, asserting that two of the Employer Trustees were invalidly appointed because they were not contributing employers or employed by a contributing employer. (Id. ¶ 44.) The Union Trustees contended that the Compensation Deadlock was not arbitrable under the Trust Agreement. (Id. ¶ 48.) The Employer Trustees filed a lawsuit to compel arbitration, and the district court held that the Trust Agreement could not be interpreted in a way that supports the Employer Trustees' position and found that it had no basis to appoint an arbitrator. Emp'r Trustees of W. Pa. Teamsters and Emp'rs Welfare Fund v. Union Trustees of W. Pa. Teamsters, 149 F. Supp. 3d 544, 550 (W.D. Pa. 2016). On appeal, the Third Circuit Court of Appeals held that the Compensation Deadlock was arbitrable and ordered arbitration. Emp'r Trustees of W. Pa. Teamsters v. Union Trustees of W. Pa. Teamsters, 870 F.3d 235 (3d Cir. 2017).

Michael E. Zobrak ("Zobrak")[3] was selected as impartial umpire to resolve the Compensation Deadlock, and a hearing was held on July 26, 2018. At the hearing, the parties' arguments concerning the Compensation Deadlock centered around a particular provision in the Trust Agreement, Section 4.2(a). In the current, operative version of the Trust Agreement, Section 4.2(a) provides:

> The Trustees shall have the power and authority to use and apply the Trust Fund for the following purposes: (a) To pay or provide for the payment of all reasonable and necessary expenses (i) of collecting the Employer and Employee contributions and payments and other monies and property to which they may be entitled; (ii) of administering the affairs of this Health and Welfare Fund, including the employment of such administrative, legal, expert and clerical assistance, the purchase or lease of such premises, materials, supplies and equipment and the performance of such other acts, as the Trustees, in their sole discretion, find necessary or appropriate in the performance of their duties; and (iii) of reimbursement for expenses and the payment of allowances properly and actually incurred in the performance of their duties with the Health and Welfare Fund, as permitted by law, including, without limitation, attendance at meetings and other functions of the Board of Trustees or its committees or while on business of the Board of Trustees, attendance at institutes, seminars, conferences or workshops for or on behalf of the Health and Welfare Fund.

(ECF No. 54 ¶ 29.) The operative language in Section 4.2(a) was incorporated into the Trust Agreement by an amendment enacted in 1977. (Id. ¶ 29.) During the hearing, the Employer Trustees presented evidence that the Trust Agreement was amended several times since its creation. The original Trust Agreement provided only for reimbursement of expenses to the Trustees and did not permit compensation for meeting attendance. (Id. ¶ 24.) The Trust Agreement was amended in 1957 to include language stating that "the trustees shall serve without compensation[.]" (Id. ¶ 25.) The Trust Agreement was again amended in 1960 to state that "the

---

[3]   Michael E. Zobrak was initially named as a defendant in Civil Action No. 19-388. On July 28, 2020, the court granted Michael E. Zobrak's motion to dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 55, 56.)

Trustees shall have received no compensation as such for their services." (ECF No. 54 ¶ 26.) In 1967, however, the Trust Agreement was amended to authorize "fees paid to the Trustees for attendance at meetings[.]" (Id. ¶ 28.)

During the hearing, the Employer Trustees presented the testimony of Charles Streiff ("Streiff"), former Fund counsel, who drafted the 1977 version of the Trust Agreement. (ECF No. 54 ¶ 30.) Streiff testified that the Trust Agreement was amended in 1977 to comply with the ERISA, which prohibits certain payments to full-time employees of participating employers. (Id. ¶¶ 31, 32.) With respect to Section 4.2(a), Streiff testified that he had no intent to alter the Trust Agreement, except to comply with the ERISA requirements. (Id. ¶ 33.) Streiff did not recall any issue being raised about the working of Section 4.2(a) at the time the Trust Agreement was amended in 1977. (Id.) The Employer Trustees also presented evidence that payment for attendance at Trustee meetings was unanimously approved by the Trustees on three separate occasions after the current operative language was incorporated into the Trust Agreement via the 1977 amendment. (ECF No. 54 ¶ 36.)

After hearing the evidence presented by both parties, Zobrak issued an award (the "Zobrak Award") finding that the Trust Agreement does not permit compensation for attendance at Trustee meetings. The Employer Trustees now seek to vacate the Zobrak Award with respect to the Compensation Deadlock and ask that the court issue a declaratory judgment stating that the authorization of past payments made for attendance at Trustee meetings does not constitute a breach of fiduciary duty. The Union Trustees seek to enforce that award.

### 2. The Appointment Deadlock

On April 8, 2015, a Union Trustee moved to amend the Trust Agreement to require Employer Trustees to be full-time employees of participating employers. (ECF No. 54 ¶ 52.) The

Employer Trustees opposed the motion, which resulted in a deadlock. (<u>Id.</u> ¶ 54.) The Employer Trustees declined the request of the Union Trustees to proceed to arbitration. The Union Trustees made a subsequent motion on December 2, 2015 "to clarify and confirm that the trust document requires that all Employer Trustees must be a full-time employee of a contributing employer to the Fund." (ECF No. 54 ¶ 56.) This motion also resulted in a deadlock (the "Appointment Deadlock").

The Union Trustees filed a lawsuit to compel arbitration, and the district court held that the Trust Agreement could not be interpreted in a way that supported the Union Trustees' position and that it had no basis to appoint an arbitrator. <u>Heider v. Dillner</u>, 195 F. Supp. 3d 762, 767 (W.D. Pa. 2016). On appeal, the United States Court of Appeals for the Third Circuit—in the same decision which resolved the Compensation Deadlock appeal—ordered arbitration on the Appointment Deadlock. <u>Emp'r Trustees of W. Pa. Teamsters</u>, 870 F.3d at 243–44. The issues pertaining to the Appointment Deadlock were addressed at the arbitration hearing held by Zobrak on July 26, 2018, which also concerned the Compensation Deadlock. (<u>Id.</u> ¶ 59.) Zobrak decided the Appointment Deadlock in favor of the Employer Trustees; neither party to the instant case seeks to vacate the Zobrak Award with respect to the Appointment Deadlock.

## C. <u>Standard of Review</u>

> Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

<u>Marten v. Godwin</u>, 499 F.3d 290, 295 (3d Cir. 2007) (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986)).

An issue of material fact is in genuine dispute if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.

242, 248 (1986); see Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof.") (citing Anderson, 477 U.S. at 248; Celotex Corp., 477 U.S. at 322-23).

> "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."

Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita, 475 U.S. at 586-87).

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party, must draw all reasonable inferences in favor of the non-moving party, and resolve all doubts in favor of the nonmoving party.  Doe v. Cty. of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001); Woodside v. Sch. Dist. of Phila. Bd. of Educ., 248 F.3d 129, 130 (3d Cir. 2001); Heller v. Shaw Indus., Inc., 167 F.3d 146, 151 (3d Cir. 1999).  A court must not engage in credibility determinations at the summary judgment stage. Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 643 n.3 (3d Cir. 1998).

### D.  Discussion

Here, there are no issues of material fact in genuine dispute. The Employer Trustees raise five claims against the Union Trustees, which are ripe for resolution via the motions for summary judgment filed by the parties. Each claim will be addressed in turn.

#### 1.  Count I: Whether Zobrak had Authority to Issue the Arbitration Award concerning the Compensation Deadlock

##### a.  Legal Principles

"[A]n arbitrator may not venture beyond the bounds of his or her authority." Matteson v. Ryder Sys., Inc., 99 F.2d 108, 112 (3d Cir. 1996) (citing United Steelworkers of Am. v.

Enterprise Wheel & Car Corp., 363 U.S. 593, 597-98 (1950)). An arbitrator's authority "is defined not only by the terms of the [agreement], but also by the scope of the issues submitted by the parties. Thus 'it is the responsibility of the arbitrator in the first instance to interpret the scope of the parties' submission, but it is within the courts' province to review an arbitrator's interpretation.'" Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs, 357 F.3d 272, 279 (3d Cir. 2004) (quoting Matteson, 99 F.2d at 112-13). "[O]ur review of the interpretation of a submission is highly deferential." Id. at 113. "[T]he touchstone for interpreting a submission must be the intention of the parties." Id. at 114. "A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award." Enter. Wheel, 363 U.S. at 598 (finding no indication that the arbitrator "went beyond the submission" in rendering the arbitration award).

### b.  **Application**

At Count I of their complaint, the Employer Trustees assert that Zobrak did not have jurisdiction to render the portion of the Zobrak Award that resolved the Compensation Deadlock. Specifically, the Employer Trustees argue that the Zobrak Award is invalid with respect to the Compensation Deadlock because it exceeds the scope of the issues submitted for arbitration and impermissibly modifies the Trust Agreement. The Employer Trustees point to the "Question to be Resolved" set forth in the Zobrak Award, which states:

> The parties each presented a deadlocked position related to additions/changes in the controlling Health and Welfare Trust. The issues in this case are weather [sic] the deadlocked position submitted by the parties should be resolved in favor of the party advancing the addition/change to the Trust Agreement?

(ECF No. 34-6.) The Employer Trustees assert that they did not request any addition or change to the Trust Agreement, and that the Trust Agreement specifically provides that an arbitrator does not have authority to modify its provisions.

The Union Trustees respond that, despite the wording of the "Question to be Resolved," Zobrak did not analyze the issue to be decided in the manner asserted by the Employer Trustees. To the contrary, they assert that the analysis supporting Zobrak's decision on the Compensation Deadlock shows that Zobrak interpreted the language of the Trust Agreement and applied his interpretation to the underlying dispute and did not change or modify the Trust Agreement.

The parties do not dispute that the issue submitted for arbitration with respect to the Compensation Deadlock was whether the Trust Agreement permits payment to eligible Trustees for attendance at Trustee meetings. The parties also do not dispute that Zobrak, acting as an impartial umpire, had no authority to change or modify the terms of the Trust Agreement. The parties dispute whether Zobrak exceeded his authority by modifying the Trust Agreement. The inclusion of the words "addition" and "change" in Zobrak's statement of the "Question to be Resolved" does, at first glance, create some ambiguity with respect to the manner in which Zobrak framed the parties' submission. It is clear from this court's review of the Zobrak Award, however, that Zobrak did not change or modify any provision of the Trust Agreement.

To resolve the Compensation Deadlock, Zobrak was asked to interpret Section 4.2(a)(iii) of the Trust Agreement to determine whether it permits compensation to eligible Trustees for meeting attendance. Section 4.2(a)(iii) provides:

> The Trustees shall have the power and authority to use and apply the Trust Fund for the following purposes: (a) To pay or provide for the payment of all reasonable and necessary expenses… (iii) of reimbursement for expenses and the payment of allowances properly and actually incurred in the performance of their duties with the Health and Welfare Fund, as permitted by law including, without limitation,

10

attendance at meetings and other functions of the Board of Trustees or its committees….

(ECF No. 1-2 at 27-28). Zobrak made two conclusions with respect to Section 4.2(a)(iii). First, Zobrak interpreted the term "reimbursement" in a way that does not authorize payment for meeting attendance. Specifically, Zobrak explained:

> Reimbursement indicates that an expenditure was incurred and that the cost of the expenditure is subject to payment, in this case by the Trust. Compensation for attendance at meeting[s] does not fall under the classification as "reimbursement["]. There is no evidence that the simple act of presence at a meeting, in and of itself, is an expenditure.

(ECF No. 34-6 at 12). Zobrak next considered the 1967 iteration of the Trust Agreement, which included language that specifically authorized payment for meeting attendance. In his opinion, Zobrak emphasized that the express language permitting compensation was removed from the Trust Agreement by the 1977 amendment. The decision to remove this language, Zobrak explained, indicates that the "controlling Trust Agreement does not allow for payment for attendance at Trust meetings." (Id. at 13.)

In resolving the Compensation Deadlock, Zobrak interpreted the provision at issue and applied it to the underlying dispute. In issuing the Award, Zobrak did not venture beyond the issue submitted by the parties for resolution. While Zobrak's phrasing of the "Question to be Resolved" may generate a slight ambiguity, the phrasing is not determinative. Enter. Wheel, 363 U.S. at 598 (stating that "[a] mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award"). Zobrak did not exceed the scope of his authority under the Trust Agreement. In resolving the Compensation Deadlock, Zobrak interpreted the language of the Trust Agreement and applied his interpretation to the underlying dispute. It cannot be genuinely disputed that Zobrak, in making his decision, was well within the jurisdiction and authority

11

defined by Section 3.15 of the Trust Agreement. Because there is no genuine dispute of material fact with respect to Zobrak's jurisdiction and authority, the Union Trustees' motion for summary judgment will be granted with respect to Count I of the complaint, and the Employer Trustees' cross-motion for summary judgment will be denied with respect to Count I.

### 2.   Counts II and III: Whether the Zobrak Award Draws its Essence from the Trust Agreement

#### a.   Legal Principles

The Court of Appeals for the Third Circuit has explained that courts play an "extremely limited role" in reviewing an arbitrator's award. Tanoma Mining Co., Inc. v. Local Union No. 1269, United Mine Workers of Am. and District 2, United Mine Workers of Am., 896 F.2d 745, 747 (3d Cir. 1990). "This high level of deference is compelled by the preference for private resolution of labor disputes expressed in the federal statutes governing labor-management relations." Id. (citing United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29 (1987)). An award may be vacated, however, "if it does not draw its essence from the [underlying agreement], but instead represents the arbitrator's 'own brand of industrial justice'" Id. at 747-48 (quoting Enter. Wheel, 363 U.S. at 597). This exception is narrow. "An arbitration award draws its essence from the [underlying] agreement if 'the interpretation can in *any rational way* be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties intention.'" Id. (quoting Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123, 1128 (3d Cir. 1969) (emphasis in original)); United States Steel and Carnegie Pension Fund v. McSkimming, 759 F.2d 269 (3d Cir. 1985) (finding that an arbitration award did not draw its essence from the underlying agreement where the decision was based entirely on an interpretation of the ERISA, without giving any consideration to the provisions of the agreement). "Our review of the arbitrator's factual findings is not whether those findings were

12

supported by the weight of the evidence or even whether they were clearly erroneous. All that is required is some support in the record." Tanoma, 896 F.2d at 748 (citing NF&M Corp. v. United Steelworkers of Am., 524 F.2d 756, 760 (3d Cir. 1975)) (finding that the existence of even "slender" support in the record for the arbitrator's finding was sufficient for the award to be upheld).

In Sun Petroleum, the plaintiff union argued that the defendant employer breached a collective bargaining agreement by contracting with a third party to repair the concrete floors of a factory. Sun Petroleum, 681 F.2d at 926. The dispute was submitted to arbitration to determine whether the agreement required the employer to hire union workers to conduct the repairs. Interpreting the agreement, the arbitrator adopted a "reasonable man" standard and decided that a provision requiring that union workers be used for indoor painting applied to a portion, but not the entirety, of the repair process. Key to the award was the arbitrator's interpretation of the term "painting." The employer argued that the award did not draw its essence from the agreement because the agreement did not provide for the application of a "reasonable man" standard. The Third Circuit Court of Appeals concluded that the award did draw its essence from the agreement, despite the application of the "reasonable man" standard, because the arbitrator did nothing more than interpret the language of the agreement and apply that interpretation to the dispute at hand. Id. at 927.

In CITGO, the plaintiff employer implemented a zero-tolerance substance abuse policy for all its petroleum refining facilities. CITGO Asphalt Refining Co. v. The Paper Allied-Indus., Chem., and Energy Workers Int'l Union Local No. 2-991, 385 F.3d 809 (3d Cir. 2004). The defendant union argued that implementation of the policy was unreasonable and violated a collective bargaining agreement. The dispute was submitted to arbitration. The underlying

agreement provided that the arbitrator could only conclude that the zero-tolerance policy was unreasonable if he also found that the employer committed a clear abuse of discretion in implementing it. The arbitrator did not find an abuse of discretion and the record did not support such a finding; the arbitrator simply found that the employer's policy was unreasonable. The arbitrator opined that giving employees a second chance with respect to substance abuse would not be inconsistent with the employer's safety goals and accordingly modified the policy. The Third Circuit Court of Appeals found that the award did not derive its essence from the agreement because, contrary to the terms of the agreement, the arbitrator did not conclude that the employer abused its discretion before finding that the zero tolerance policy was unreasonable and there was no evidence in the record to support such a finding. To the contrary, the award was based solely on the arbitrator's own sense of fairness and equity. Id. at 819-20.

### b. **Application**

In Count II of their complaint, the Employer Trustees assert that the Zobrak Award ignores "the undisputed and uncontradicted testimony of the individual who drafted the provision of the Trust Agreement in dispute." (ECF No. 1 at 9.) The Employer Trustees argue that Zobrak did not give sufficient weight to the evidence they presented at the arbitration hearing, and, therefore, the Zobrak Award does not draw its essence from the Trust Agreement. The Union Trustees respond that: (a) Zobrak was not required to consider extrinsic evidence at all; and (b) the weight given by Zobrak to the Employer Trustees' evidence does not indicate that the essence of the Trust Agreement was violated. The Union Trustees emphasize that Zobrak relied primarily on the language of Trust Agreement to resolve the Compensation Deadlock, and the Zobrak Award, therefore, does draw its essence from the Trust Agreement.

In Count III of the complaint, the Employer Trustees argue that Zobrak erroneously viewed himself as authorized to make changes to the Trust Agreement and imposed his "own notion of an equitable balance of interests under the Trust Agreement." (ECF No. 35 at 12.) The Employer Trustees argue that, by deciding one issue in favor of each party, Zobrak implemented his own brand of justice. The Union Trustees again respond that the Zobrak Award is based solely on an interpretation of the Trust Agreement. In essence, Count III is a restatement of Count II. Both counts raise the issue whether the Zobrak Award draws its essence from the Trust Agreement.

With respect to Count II of the complaint, the Zobrak Award cannot be vacated simply by the insufficiency of the weight afforded by the arbitrator to the evidence presented. Here, the Employer Trustees submitted evidence that compensation for meeting attendance is permissible under the operative Trust Agreement. This court's review of Zobrak's factual findings, however, is "not whether those findings were supported by the weight of the evidence, or even whether they were clearly erroneous." Tanoma, 896 F.2d at 748. An award, like the Zobrak Award, must be upheld if there is *some support* for it in the record. Id. As discussed above, Zobrak based his decision, in part, on the undisputed fact that the language authorizing compensation in the 1967 version of the Trust Agreement was removed by the 1977 amendment. In addition, Zobrak based his decision on the language of the operative Trust Agreement. This record reflects that there *was* support for Zobrak's conclusion about the Compensation Deadlock. Under those circumstances, Zobrak's decision about the weight afforded to the Employer Trustees' evidence is not a basis for vacating the Zobrak Award.

With respect to Count III of the complaint, the Zobrak Award must be upheld if it can "in *any rational way* be derived from the agreement[.]" Tanoma, 896 F.2d at 748. The instant case is

easily distinguishable from other instances where it was appropriate to vacate an arbitration award. In <u>CITGO</u>, the arbitrator issued an award that contradicted an express term of the underlying agreement. In <u>McSkimming</u>, the arbitrator based his entire decision on an interpretation of the ERISA and did not consider the underlying agreement. In the instant case, Zobrak interpreted the applicable provision of the Trust Agreement and applied that interpretation to the Compensation Deadlock. The language of the Trust Agreement is consistent with the Zobrak Award. Viewed in light of the language and context of prior amendments, the Zobrak Award is rationally derived from the Trust Agreement. No reasonable factfinder could find to the contrary.

The Union Trustees' motion for summary judgment will, therefore, be granted with respect to Counts II and III, and the Employer Trustees' cross-motion for summary judgment will be denied with respect to Counts II and III.

### 3. Count IV: Whether Zobrak Breached a Fiduciary Duty

In Count IV of the complaint, the Employer Trustees assert that Zobrak acted as a fiduciary in deciding the Compensation Deadlock and that he violated his fiduciary duty by modifying the terms of the Trust Agreement without having authority to do so. The Union Trustees respond that Zobrak is shielded from liability by the doctrine of arbitral immunity. To the extent that the Employer Trustees sought relief against Zobrak, in the form of liability or injunctive relief, this court dismissed the claim asserted at Count IV for the reasons set forth in the opinion and order granting Zobrak's motion to dismiss for failure to state a claim. (ECF Nos. 55, 56.) Here, the court already concluded as a matter of law that Zobrak did not modify the Trust Agreement. The Employer Trustees did not assert, and the court cannot discern, any other form of relief that could be granted with respect to Count IV. The Union Trustees' cross-motion

for summary judgment, therefore, will be granted with respect to Count IV, and the Employer

Trustees motion for summary judgment will be denied with respect to Count IV.

### 4. <u>Count V: Whether Authorizing Prior Payments to Certain Trustees for Meeting Attendance Constituted a Breach of Fiduciary Duty</u>

#### a. <u>Legal Principles</u>

28 U.S.C. § 2201 provides that "[i]n a case of actual controversy within its jurisdiction,

… any court of the United States … may declare the rights and other legal relations of any

interested party seeking such declaration[.]" 28 U.S.C. § 2201(a). "Declaratory judgments are

'inappropriate solely to adjudicate past conduct' and are not 'meant simply to proclaim that one

party is liable to another.'" <u>Meyer v. Delaware Valley Lift Truck, Inc.</u>, 392 F. Supp. 3d 483, 493

(E.D. Pa. 2019) (quoting <u>Warren v. Lehigh Cty. Ct. of Common Pleas</u>, 351 F. Supp. 3d 835, 839

(E.D. Pa. 2019); <u>Corliss v. O'Brien</u>, 200 F. App'x 80, 84 (3d Cir. 2006) (finding that defendant's

request for judgment declaring that his constitutional rights had been violated was not a request

for declaratory judgment in the "true legal sense").

#### b. <u>Application</u>

The Employer Trustees request a declaratory judgment under 28 U.S.C. § 2201(a), stating

that the Trustees did not breach their fiduciary duty to the Fund by authorizing payments to

eligible Trustees for meeting attendance after the current operative language was inserted into

the Trust Agreement in 1977. The Employer Trustees seek to adjudicate past conduct and their

request for a declaratory judgment is, therefore, inappropriate as a matter of law. The Union

Trustees' motion for summary judgment, therefore, will be granted—albeit not on the merits of

the underlying dispute[4]—with respect to Count V, and the Employer Trustees' cross-motion for summary judgment will be denied with respect to Count V.

### 5. <u>Counterclaim: Enforcement of the Zobrak Award</u>

#### a. <u>Legal Principles</u>

"District courts have very little authority to upset arbitrators' awards." <u>United Transp. Union Local 1589 v. Suburban Transit Corp.</u>, 51 F.3d 376, 379 (3d Cir. 1995). An arbitration award must be enforced "as long as the arbitrator has *arguably* construed or applied the contract." <u>Id.</u> (citing <u>News Am. Publications, Inc. v. Newark Typographical Union, Local 103</u>, 918 F.2d 21 (3d Cir.1990)). An arbitration award may be vacated, however, if it violates public policy. <u>W.R. Grace & Co. v. Local Union 759</u>, 461 U.S. 757, 766 (1983). To set aside an award on public policy grounds, the "public policy must be 'well defined and dominant' before it may be used to upset an arbitrator's award." <u>Id.</u> at 381 (quoting <u>Exxon Shipping Co. v. Exxon Seamen's Union</u>, 11 F.3d 1189, 1192, 1194 (3d Cir.1993)). "In determining whether a public policy exists, federal courts must use common sense, keeping in mind that 'a formulation of public policy based only on general considerations of supposed public interests is not the sort that permits a court to set aside an arbitration award that was entered in accordance with a valid collective bargaining agreement.'" <u>Id.</u> at 381-82 (quoting <u>United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.</u>, 484 U.S. 29, 44 (1987)).

#### b. <u>Application</u>

The Union Trustees asserted a counterclaim seeking to enforce the Zobrak Award. As discussed above, summary judgment is being granted in favor of the Union Trustees with respect

---

[4]    The court is not resolving the merits of the underlying dispute, i.e., whether there was a breach of a fiduciary duty. The court is determining that the dispute is inappropriate for resolution via a declaratory judgment action.

to the Employer Trustees' claim to vacate the Zobrak Award. The Union Trustees did not assert or present any evidence suggesting that the Employer Trustees violated the Zobrak Award. The Union Trustees did not allege any injury for which enforcement of the Zobrak Award would provide a remedy. The Employer Trustees' motion for summary judgment, therefore, will be granted with respect to the counterclaim asserted by the Union Trustees, and the Union Trustees' cross-motion for summary judgment will be denied with respect to that counterclaim.

### E.  Conclusion with respect to civil action number 19-388

For the reasons set forth in this opinion, the Employer Trustees' motion for summary judgment will be denied with respect to Counts I, II, III, IV, and V of the complaint, and granted with respect to the counterclaim asserted by the Union Trustees. The Union Trustees' motion for summary judgment will be granted with respect to Counts I, II, III, IV, and V[5] of the complaint, and denied with respect to the counterclaim. Judgment will be entered in favor of the Union Trustees and against the Employer Trustees with respect to Counts I through V and judgment will be entered in favor of the Employer Trustees and against the Union Trustees with respect to the Union Trustees' counterclaim. There being no other claims to adjudicate in Civil Action 19-388, the case at that number will be closed.

### III.   Civil Action 18-1112

### A.  Procedural History

On November 13, 2018, the Employer Trustees filed an amended complaint seeking enforcement of an arbitration award and asserting a claim for breach of fiduciary duty under Section 404(a)(1)(D) of the ERISA, 29 U.S.C. § 1104(a)(1)(D). (ECF No. 17.) The case was

---

[5]      As previously noted with respect to Count V, the grant of summary judgment is not on the merits of the underlying dispute; rather, summary judgment is appropriate because the claim cannot be resolved via a declaratory judgment action.

referred to a magistrate judge, in accordance with 28 U.S.C. § 636(c)(1).  The Union Trustees

filed their answer to the amended complaint on November 29, 2018, and raised a counterclaim

for breach of fiduciary duty, under § 1104(a)(1)(D), against the Employer Trustees. (ECF No.

22.) On October 1, 2019, both parties filed motions for summary judgment. (ECF Nos. 46, 48.)

On April 22, 2020, the magistrate judge issued a R&R on the cross-motions for summary

judgment. (ECF No. 68.) The Union Trustees filed timely objections to the R&R, and the

Employer Trustees filed their response. (ECF Nos. 69, 70.)

### B.  Factual Background[6]

At a meeting of the Trustees, held on December 2, 2015, a Union Trustee presented a

motion

> that any fees paid to attorneys pursuant to Section 3.15 of the trust document which
> allows for the Health and Welfare Fund to pay attorney's [sic] fees incidental to
> proceedings instituted to break a deadlock be limited to an amount not to exceed
> $250.00 per billable hour.

(ECF No. 45-4.) The motion resulted in a deadlock, with the 5 Union Trustees voting in favor of

the motion, and the 5 Employer Trustees voting against it (the "Fees Deadlock"). In accordance

with Section 3.15 of the Trust Agreement, the Trustees appointed Joseph Fagan ("Fagan") as

impartial umpire. A hearing was held before Fagan on September 14, 2016. (ECF No. 44 ¶ 36.)

In the award (the "Fagan Award"), Fagan interpreted the relevant provision of the Trust

Agreement, Section 4.2, to determine whether attorneys' fees can be limited in the manner

proposed by the Union Trustees. (ECF No. 17-4.) The pertinent provision of the Trust Agreement

states:

> The Trustees shall have the power and authority to use and apply the Trust Fund
> for the following purposes: (a) **To pay or provide for the payment of all**
> **reasonable and necessary expenses** … (ii) of administering the affairs of this

---

[6]     In all material respects, the facts in this case are not disputed.

Health and Welfare Fund, **including the employment of** such administrative, **legal**, expert and clerical **assistance**, the purchase or lease of such premises, materials, supplies and equipment and the performance of such other acts, **as the Trustees, in their sole discretion, find necessary or appropriate in the performance of their duties[.]**

(ECF No. 45-1 (emphasis added).) Fagan's interpretation of Section 4.2 addressed the operative meaning of the word "reasonable." Fagan concluded that whether attorneys' fees are reasonable in any circumstance is open to interpretation and may vary based on the circumstances. Fagan also concluded that the legal fees incurred by opposing parties need not be equal to be reasonable. The Fagan Award provides:

> Before proceeding to the questions of reasonability of the $250/hr. limitation on payment for Employer Trustee legal fees, payable from the Fund, the question of arbitrator authority must be addressed.
>
> Section 3.15 limits that authority to "the provisions of the Trust Agreement". This restriction is further emphasized by the additional statement "have no jurisdiction or authority to change or modify the provisions of this Trust Agreement".
>
> Reference is made in this same provision in regard to the issue before the Arbitrator. It is clear that this provision and the language "reasonable compensation" and "attorney fees" are related to the deadlock or arbitration case.
>
> On the other hand Section 4.12 clearly indicates the "trustees shall have the power and authority to use and apply the Trust Fund for the following purposes...(a) To pay or provide for the payment of all reasonable and necessary expenses..." of administering the affairs of this Health and Welfare Fund, including the employment of such...legal...assistance...as the Trustees, in their sole discretion, find necessary and appropriate in the performance of their duties".
>
> This latter language applies to the deadlocked Union proposal now before the arbitrator.
>
> Whether the fees charged by the Employer Trustees are, as the Union would indicate, "unreasonable", may be open to question and both parties have provided data which would indicate how you obtain the data and services used result in greatly varying results as to "reasonable".
>
> There can also be a question of reasonableness in the Employer taking more from the Welfare Fund that the Union is removing for a similar purpose.
>
> On the other hand the Arbitrator cannot ignore the fact the parties (Union and Employer) agreed sixteen years ago on the Fund Agreement which currently exists and which the Arbitrator is bound to adhere to.

> There is no suggestion or claim that monies withdrawn from the Fund, by the Union [T]rustees and Employer Trustees, for similar legal expenses, were ever equal in amount during this period. Yet the thrust of this complaint or grievance is, in effect, asking the Arbitrator to supply language to require that result.
>
> This is not to suggest that such a result would not be equitable either by equal amounts being paid for such legal expenditure on equal amounts withdrawn from the Fund no matter what the respective legal payments were.
>
> Saying that, the Arbitrator has no authority to add language to the January 1, 2000 Trust Agreement which provide the result the Union Trustees are requesting.

(ECF No. 45-11 at 5-6.) Accordingly, Fagan denied the Union Trustees' motion to limit the Trustees' legal fees to a maximum rate of $250 per hour.

Following Fagan's resolution of the Fees Deadlock, the Union Trustees repeatedly voted to authorize payment of the Employer Trustees' attorneys bills and expenses, except for those related to the Compensation Deadlock. The Employer Trustees' legal expenses were reimbursed in full because certain Union Trustees abstained from voting, giving the Employer Trustees a majority of votes. On January 10, 2018, after the appointment of 2 new Union Trustees, a motion to authorize payment of the Employer Trustees' legal expenses resulted in a deadlock. (ECF No. 45-28.) On March 7, 2018, the Union Trustees presented a motion that future legal expenses be approved up to a maximum rate of $260 per hour. (ECF No. 45-31.) The motion deadlocked. (ECF No. 45-33.) A similar motion was made and resulted in a deadlock on three subsequent occasions. (ECF Nos. 45-36, 45-38, 45-40.)

On February 2, 2019, a Union Trustee made the following motion:

> I move to approve payment of the [E]mployers legal expenses incurred up to September 4, 2018 at the hourly rate charge [sic] for all legal expenses not attributable to the compensation of the Employer Trustee Deadlock.
>
> I further move that all charges for Employer Trustees legal expenses incurred subsequent to September 4, 2018, which are not attributable to the compensation of the Employer Trustee deadlock, be paid at a rate no greater than $300.00 per hour. I further move that once the Trustees agree upon a proper rate

for legal services provided to attorneys representing Trustees in legal proceedings that agreed upon rate will be retroactive to September 5, 2018. In the event the Trustees agreed upon rate is greater than $300.00, the Fund will compensate the attorney for the difference between $300.00 and the amount agreed upon for hours subsequent to September 4, 2018. In the event the Trustees agree to a rate less than $300.00 per hour, there shall be no requirement that the attorney refund any amount for services paid at the $300.00 per hour rate.

The Employer Trustees will continue to seek payment on the remaining unpaid amounts through its currently pending federal lawsuit. The Union Trustees will continue to assert in that lawsuit that they owe no further amounts other than what is stated in this Motion.

(ECF No. 45-51.) The Trustees voted on this motion on March 5, 2019, which resulted in a deadlock. (ECF No. 45-53.) On April 7, 2019, the Union Trustees presented the following three motions:

Motion 1: Union Trustees move to approve all payments of legal fees incurred at the rate charged by the Employer Trustees attorney on or before September 4, 2018, which are related to the Employer's advancement or defending the issue of whether an Employer Trustee must be an "Employer" as defined in the Trust Agreement.

Motion 2: The Union Trustees move that for any work that either the Union or the Employer Trustees' attorney performs connected with or in relation to the Employer Trustees advancement or defending whether an Employer Trustee must be an "Employer" occurring subsequent to September 5, 2018, be paid $300.00 per hour unless and until the Trustees mutually agree upon an appropriate rate of compensation for attorneys performing such work. Once that decision is made, in the event the rate agreed upon is greater than $300.00 per hour, the attorney shall be reimbursed the difference on a retroactive basis. In the event it is less than $300.00 per hour, the attorney shall not be required to refund any of the fees.

Motion 3: The Union Trustees move that under no circumstances will the Trust pay for any legal fees incurred by Employer Trustees in any attempt to pay for legal services attributable to the Employer Trustees attempt to receive from the Trust Fund $600.00 per meeting, including any fees attributable to the current lawsuit in which the Employer Trustees allege the Union Trustees have failed to abide by Arbitrator Fagan's award. It is the Union Trustees position that to pay attorney's fees to advance a motion requiring the payment of $600.00 is clearly a violation of Landrum-Griffin and to pay an attorney to defend or advance that position is likewise a violation of the law subjecting Trustees to both criminal and civil penalties.

(ECF No. 45-55.) At the Trustee meeting on May 7, 2019, the Trustees unanimously approved the first motion and postponed voting on the second and third motions. (ECF No. 45-57.)

The instant civil action was initiated on August 22, 2018. At Count I of their complaint, the Employer Trustees seek enforcement of the Fagan Award. At Count II, the Employer Trustees assert a claim for breach of fiduciary duty for failure to comply with the Fagan Award. The Union Trustees asserted a counterclaim for breach of fiduciary duty based on the Employer Trustees' pursuit of compensation for Trustee meetings.

As mentioned, the cross-motions for summary judgment filed in this case were referred to a magistrate judge. There were no issues of material fact in genuine dispute, and the motions were ripe for consideration. The magistrate judge recommended that the court: (1) grant the Employer Trustees' motion for summary judgment with respect to Counts I and II of the amended complaint; (2) deny without prejudice the Employer Trustees' motion for summary judgment with respect to the Union Trustees' counterclaim; and (3) deny the Union Trustees' partial motion for summary judgment. With respect to Count I, the magistrate judge concluded that the Union Trustees violated the Fagan Award by refusing to authorize the reimbursement of the Employer Trustees' legal expenses related to the Appointment Deadlock and this litigation unless those legal expenses were subject to an hourly fee rate cap selected by the Union Trustees. The magistrate judge found that the Union Trustees waived the right to object to the Fagan Award because they did not attempt to vacate, modify, or correct the Fagan Award within the applicable statute of limitations. The magistrate judge also found that use of Fund assets to pay the Employer Trustees' legal expenses related to the Compensation Deadlock did not violate the ERISA and that the Union Trustees asserted that issue as a pretext. With respect to Count II, the magistrate judge found that the Union Trustees breached their fiduciary duty under the ERISA by violating the Fagan Award. With

respect to the Union Trustees' counterclaim, the magistrate judge declined to address the merits of the claim pending the resolution of civil action number 19-388.

This court will now address each of the Union Trustees' objections in turn and consider whether summary judgment is warranted with respect to the Union Trustees' counterclaim based upon the Employer Trustees' alleged breach of fiduciary duty to the Fund.

### C.  Objections to Report and Recommendation

The Union Trustees raised ten objections to the R&R (ECF No. 69), and the Employer Trustees filed a brief in opposition to the objections. (ECF No. 70.) The court will address each objection in turn.

#### 1.  Standard of Review

When objections to a report and recommendation have been filed, under 28 U.S.C. § 636(b)(1), the court must make a *de novo* determination of those portions of the report to which objections are made. See Sample v. Diecks, 885 F.2d 1099, 1106 n. 3 (3d Cir.1989); FED. R. CIV. P. 72(b)(3). The court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1).

#### 2.  Objections 1 and 2

"'Where objections do not respond to the Magistrate's recommendation, but rather restate conclusory statements from the original petition, the objections should be overruled.'" In re Spectrum Alliance, LP, 609 B.R. 11, 15 (E.D. Pa. 2019) (quoting Prout v. Giroux, Civ. A. No. 14-3816, 2016 WL 17200414 (E.D. Pa. Apr. 29, 2016)). The Union Trustees object to the magistrate judge's recommendation that the Employer Trustees' motion for summary judgment be granted and the Union Trustees' motion for summary judgment be denied. Objections 1 and 2 each consist of a single sentence, neither of which sets forth any argument or analysis. These objections are

nothing more than conclusory statements, were previously raised in the Union Trustees' motion for summary judgment and were discussed at length in the R&R. Accordingly, the Union Trustees' first and second objections will be denied.

### 3. Objection 3

#### a. The Report and Recommendation

The magistrate judge recommended that the Employer Trustees' motion for summary judgment be granted with respect to Count I of the amended complaint, i.e., the Employer Trustees' action to enforce the Fagan Award. The magistrate judge explained that this court should summarily enforce the Fagan Award because the Union Trustees—by failing to attempt to modify, vacate or correct the Fagan Award within the applicable statute of limitations—waived any argument that challenges the validity of the Fagan Award. (ECF No. 68 at 13-15.) The magistrate judge's recommendation is based upon the following findings:

  i.   the Union Trustees requested that Fagan alter the Trust Agreement by "set[ting] a maximum hourly rate for the attorneys' fees of the Employer Trustees" that were payable by the Fund (ECF No. 68 at 19);

  ii.  Fagan ruled that "[h]e had no authority under the Trust Agreement to set a maximum hourly rate for the attorneys' fees of the Employer Trustees[,]" i.e., he "clearly and unequivocally ruled that the Union Trustees could not put a cap on the hourly rate paid to attorneys for the Employer Trustees" (id.); and

  iii. the Union Trustees violated the Fagan Award by "fail[ing] to pay certain of the attorneys' fees of the Employer Trustees" (id. at 15).

The magistrate judge also explained that even if the court could entertain the Union Trustees' argument that the Fagan Award violates the ERISA, it should grant summary judgment with respect to Count I and enforce the Fagan Award. According to the magistrate judge, the Union Trustees' argument that the Fagan Award violates the ERISA is "a pretextual argument to block enforcement of the Fagan Award" and "there is no ERISA violation that precludes enforcement of

26

the Fagan Award relative to the payment of the Employer Trustees relative to any deadlocked matter…."  (ECF No. 68 at 19-20.)

### b.  **The Union Trustees' Objection and the Employer Trustees' Response**

The Union Trustees do not dispute that at this stage they are unable to challenge the validity of the Fagan Award; indeed, their motion for summary judgment provides that the Union Trustees "do not dispute the validity of the Fagan Award, nor do they dispute that the Board of Trustees is bound by the Fagan Award." (ECF No. 52 at 6.) The Union Trustees argue that the magistrate judge committed an error of law because she "misconstrued the Fagan Award and greatly expanded its scope beyond the actual text of the award…." (ECF No. 69 at 2.) According to the Union Trustees, Fagan denied their motion to impose a blanket limitation on attorneys' fees of $250 per hour because he did not have jurisdiction to decide the issue. (Id. at 5.) They argue that the magistrate judge expanded the scope of that award and that in effect the magistrate judge precluded the Union Trustees from challenging the reasonableness or impropriety of all legal expenses incurred by the Employer Trustees. (Id. at 3.) The Union Trustees argue that the Fagan Award does not prohibit them from determining whether attorneys' fees submitted for reimbursement by the Employers Trustees are necessary and reasonable or from refusing to reimburse legal expenses improperly incurred by any Trustees in pursuit of personal compensation. (Id. at 5.) The Union Trustees assert that their various motions to place a cap on the legal fees payable by the Fund were "attempt[s]…to establish parameters for determining whether attorneys' fees incurred in connection with a deadlock are 'reasonable' and 'necessary' as required by Section 4.2 of the trust Agreement[.]" (ECF No. 69 at 9.)

The Employer Trustees argue that the magistrate judge properly interpreted the Fagan Award. (ECF No. 71 at 5-11.) According to the Employer Trustees, Fagan properly decided the

issue before him within the bounds of his authority and that the "Trust Agreement did not authorize him to put an hourly rate cap on legal fees." (Id. at 5.) Based upon that understanding of the Fagan Award, the Employer Trustees argue that the Union Trustees violated the Fagan Award by unilaterally refusing to authorize the payment of their legal fees unless they were subject to hourly fee rate caps selected by the Union Trustees with respect to: (1) the Compensation Deadlock; (2) the Appointment Deadlock; and (3) the instant lawsuit. (Id. at 7.)

### c.  **The issues presented**

First, this court finds that the Union Trustees do not challenge the *validity* of the Fagan Award, (ECF No. 69 at 10); indeed, they never properly challenged the validity of the Fagan Award after it was issued, and, thus, it is considered final and binding under Pennsylvania law. (ECF No. 45-1 at 56 (the Trust Agreement is governed by Pennsylvania law, except for matters governed by federal law); Novinger Grp., Inc. v. Hartford Life & Annuity Ins. Co., No. CIV.A. 1:06-CV-0188, 2008 WL 5378288, at *11 (M.D. Pa. Dec. 23, 2008) (explaining that under Pennsylvania law an arbitration award from which no appeal is taken is considered final and binding) (citing Ottaviano v. Se. Pa. Transp. Auth., 361 A.2d 810, 814 (Pa. 1976)). The Union Trustees challenge the *scope* of the Fagan Award and argue that they did not violate the Fagan Award.

To resolve the motions for summary judgment with respect to the Employer Trustees' request for enforcement of the Fagan Award, this court must decide whether the Fagan Award prohibited the Union Trustees from unilaterally: (i) refusing to authorize the reimbursement of the Employer Trustees' legal expenses related to the Appointment Deadlock and this litigation unless

those expenses were subject to hourly fee rate caps selected or required to be approved[7] by the Union Trustees; and (ii) refusing to authorize the reimbursement of **any** legal expenses incurred by the Employer Trustees related to the Compensation Deadlock. If the Fagan Award prospectively prohibited that conduct, this court may issue an order enforcing the Fagan Award and finding that the Union Trustees violated the award. If, however, the Fagan Award did not prohibit the Union Trustees' conduct, the Employer Trustees must present their grievances about the Union Trustees' conduct in the first instance to an arbitrator, per the Trust Agreement. The central issues with respect to Count I of the complaint, therefore, are: (i) whether this court may enforce the Fagan Award with respect to all or any part of the Union Trustees' conduct; and (ii) if not, whether the parties' disputes about the Union Trustees' conduct are subject to arbitration.

### d.  The applicable law with respect to the judicial enforcement of an arbitration award

"'[A]rbitration is clearly the preferred method for resolving disputes between the union and the employer[.]'" <u>Local 827, Int'l Bhd. of Elec. Workers, AFL-CIO v. Verizon New Jersey, Inc.</u>, 458 F.3d 305, 309 (3d Cir. 2006) (quoting <u>Butler Armco Indep. Union v. Armco, Inc.</u>, 701 F.2d 253, 255 (3d Cir.1983)). Thus, there is a well-recognized presumption of arbitrability. <u>Id.</u> (citing <u>AT & T Techs., Inc. v. Commc'ns Workers of Am.</u>, 475 U.S. 643, 648 (1986)). The Supreme Court of the United States has explained:

> [W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration

---

[7]     The Union Trustees repeatedly selected a maximum fee rate cap of $260 per hour that would apply to limit future legal expenses reimbursed by the Fund to the Employer Trustees and later increased that amount to $300 per hour, *subject to any increase in that hourly fee rate cap agreed to by the Trustees*. Under those circumstances, the Union Trustees maintained the unilateral power to approve the hourly fee rate cap because one of their votes would be needed for a majority of the Trustees to approve any increase in the hourly fee rate cap above $300 per hour.

clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." <u>Warrior & Gulf</u>, 363 U.S., at 582–583, 80 S.Ct., at 1352–1353. <u>See also</u> <u>Gateway Coal Co. v. Mine Workers</u>, <u>supra</u>, 414 U.S., at 377–378, 94 S.Ct., at 636–637.

<u>AT & T</u>, 475 U.S. at 650.

"[T]he question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." <u>Id.</u>; <u>see</u> <u>Emp'r Trustees of W. Pa. Teamsters</u>, 870 F.3d at 240-41. "[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." <u>Id.</u> at 649-50 (citing <u>United Steelworkers of Am. v. American Mfg. Co.</u>, 363 U.S. 564, 567 (1960)).

Arbitrability, however, "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." <u>AT & T</u>, 475 U.S. at 648 (citing <u>United Steelworkers of America v. Warrior & Gulf Nav. Co.</u>, 363 U.S. 574, 582 (1960)). It is well recognized that federal courts may enforce final and binding *arbitration awards* and *settlement agreements* entered into by parties to a collective bargaining agreement without first compelling the parties to arbitrate the relevant dispute. <u>Trenton Metro. Area Local of Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.</u>, 636 F.3d 45, 53 (3d Cir. 2011) (citing <u>United Mine Workers of Am. Dist. No. 5 v. Consolidation Coal Co.</u>, 666 F.2d 806, 809 (3d Cir. 1981)). In other words, an arbitration clause does not preclude a federal court from enforcing a final and binding arbitration award or settlement agreement. <u>Id.</u> "**In the presence of a 'final and binding' clause, once an arbitrator makes an award it becomes a part of the contract.**" <u>Wilbur Chocolate Co., Inc. v. Bakery, Confectionary and Tobacco Workers' Intern. Union, Local 464,</u>

Civ. A. 86-5479, 1988 WL 33881, at *3–4 (E.D. Pa. 1988) (emphasis added); see Local 616, Int'l Union of Electrical, Radio and Machine Workers v. Byrd Plastics, Inc., 428 F.2d 23, 26 (3d Cir. 1970) ("[A] clause stating that a decision of an arbitrator is 'final and binding' is no doubt intended to establish a principle similar to that of res judicata, and to bar reconsideration of the disputes fully decided on the merits").

To be judicially enforceable, the settlement agreement or arbitration award must be "final and binding" and "sufficiently specific as to be capable of implementation[.]" United Mine, 666 F.2d at 809-10. Federal courts, however, must "'exercise the utmost restraint to avoid intruding on the bargained-for method of dispute resolution, and when enforcement of an arbitration award or settlement agreement is sought under section 301, the court must be able to say 'with positive assurance' that the award or settlement was intended to cover the dispute.'" Trenton, 636 F.3d at 53 (quoting United Mine, 666 F.2d at 811). In other words, "[i]f the court has any doubt, the parties should be returned to their grievance procedure and arbitration, for it is an arbitrator, and not the court, who is to decide whether the same issue has already been resolved in an earlier proceeding." United Mine, 666 F.2d at 811 (emphasis added).

Based upon the foregoing principles, there are three requirements[8] for a district court to enforce a settlement agreement or arbitration award "that is otherwise governed by a binding arbitration provision:"

    (1) the agreement or award must be final and binding;

    (2) the agreement or award must be sufficiently specific to be capable of
          implementation; and

---

[8]    Because the parties did not present to the magistrate judge the applicable law with respect to the enforcement of an arbitration award, the magistrate judge did not address it. The parties also did not present the pertinent case law to this court.

(3) there must be 'positive assurance' that the agreement or award is intended to
cover the relevant dispute.

Trenton, 636 F.3d at 53 n.7; Butler, 701 F.2d at 256 n.1.[9]

---

[9]     Here, the Employer Trustees seek the enforcement of a prior arbitration award. Thus, the
court must follow Trenton and apply the three-part test to the facts of this case to determine
whether the court can enforce the award. The Union Trustees argue, however, that the Employer
Trustees' grievances about the Union Trustees' conduct are not governed by the Fagan Award.
The Union Trustees argue that under those circumstances, those grievances must be arbitrated.
As discussed above, however, a district court has the authority to enforce an arbitration award if
it is positively assured that the award, which is final and binding and sufficiently specific to be
implemented, was intended to have prospective effect on the parties' relationship.

    The procedural posture of this case stands in contrast to a case in which the defense of res
judicata is raised as a defense to arbitration. The Third Circuit Court of Appeals has instructed
that under those circumstances, the court must determine whether the res judicata defense is
based upon an arbitration award or a prior federal judgment, e.g., an arbitration award that was
confirmed by a federal district court. John Hancock Mut. Life Ins. Co. v. Olick, 151 F.3d 132,
137-40 (3d Cir. 1998). If the res judicata defense to arbitrability is based upon a judgment
entered by a court, the court must decide the preclusive effects of the judgment on the present
dispute. Id. at 139. If, however, the res judicata defense to arbitrability is based upon an
arbitration award, an arbitrator in the first instance must decide the preclusive effects of the
arbitration award. Id. at 139.

    For example, in Steris Corp. v. International Union, 489 F.Supp.2d 501 (W.D. Pa. 2007),
the court recognized that when preclusion is raised as a defense to arbitrability, an arbitrator—
and not the court—must decide the preclusive effect of the *arbitration award* (as opposed to a
court judgment) on the subsequent arbitration. The plaintiff in Steris requested, among other
things, for the court: (1) to confirm the prior arbitration award (count one); and (2) to enjoin a
second arbitration because the issue to be decided in the second arbitration was identical to the
issue decided in the prior arbitration award (count two). Id. at 505. The court first addressed
count two and held that injunctive relief was not available to the plaintiff under the relevant labor
laws and, therefore, it dismissed the plaintiff's request to enjoin the second arbitration. Id. at
510. The court also agreed with the defendants' alternative argument that count two should be
dismissed because the preclusive effect of the prior arbitration award on the subsequent
arbitration was an issue to be decided by an arbitrator and not the court. Id. at 510, 514. The
court relied upon, among other things, Supreme Court precedent that arbitrators should decide
defenses to arbitrability and other procedural questions that "'grow out of the dispute and bear on
its final disposition[.]'" Id. at 511 (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79,
84 (2002)). The court considered the arbitration provision in the parties' collective bargaining
agreement, found the presumption of arbitration applied in the case, and held the parties intended
the dispute raised in the subsequent arbitration—which was identical to the issue decided in the
prior arbitration award—to be arbitrable, albeit with the arbitrator to resolve the res judicata
defense. Id. at 514. Under those circumstances, the res judicata effect of the prior arbitration
award on the parties' subsequent arbitration was itself a matter for the arbitrator to resolve. Id.

    The court dismissed count one because the court lacked jurisdiction under Article III of
the United States Constitution to confirm the arbitration award. Steris, 489 F.Supp.2d at 514-515.

e. **Application**

The court will first address the Union Trustees' unilateral refusal to authorize the

reimbursement of the Employer Trustees' legal expenses related to the Appointment Deadlock

and this litigation unless the legal expenses were subject to hourly fee rate caps selected or

required to be approved by the Union Trustees. Second, the court will address the Union

Trustees' failure to cause the reimbursement of any legal fees incurred by the Employer Trustees

related to the Compensation Deadlock.

i. **Legal Fees related to the Appointment Deadlock and this Litigation**

With respect to the Union Trustees' unilateral refusal to authorize the reimbursement of

the Employer Trustees' legal expenses related to the Appointment Deadlock and this litigation

unless those legal expenses were subject to hourly fee rate caps selected or required to be

approved by the Union Trustees, the issue before the court is whether the Fagan Award

prospectively applies to prohibit that conduct. In the Third Circuit, district courts must apply a

three-part test to determine whether an arbitration award may be enforced by the court or the

parties must present their grievance to an arbitrator. Trenton, 636 F.3d at 53. For this court to

---

The court explained that the defendants did not attack the validity of the arbitration award and the plaintiff did not allege that defendants failed to comply with the award. Id. Under those circumstances, the plaintiff did not sufficiently allege it suffered an injury as required to have standing under Article III.  Id. at 515.

As explained above, the Employer Trustees are seeking the enforcement of the Fagan Award. They seek a determination that the Union Trustees' refusal to authorize the reimbursement of the Employer Trustees' legal expenses related to the Appointment Deadlock and this litigation unless those legal expenses were subject to an hourly fee rate cap selected or required to be approved by the Union Trustees violated the Fagan Award. The Employer Trustees—unlike the plaintiff in Steris—do not seek injunctive relief, and an arbitration proceeding about the instant dispute was not commenced. Res judicata is not asserted as a defense to arbitration. Under those circumstances, the court will apply the three-part test set forth in Trenton to determine whether the court may enforce the Fagan Award and find that the Union Trustees violated that award.

grant summary judgment to the Employer Trustees with respect to Count I and enforce the Fagan Award, it must find that the undisputed evidence of record shows: (1) the Fagan Award was final and binding; (2) the Fagan Award is sufficiently specific to be capable of implementation; and (3) there is positive assurance that the Fagan Award prohibited the Union Trustees from unilaterally refusing to authorize the reimbursement of the Employer Trustees' legal expenses related to the Appointment Deadlock and this litigation unless those legal expenses were subject to hourly fee rate caps selected or required to be approved by the Union Trustees.

The undisputed evidence of record shows that the Fagan Award was final and binding; indeed, the Trust Agreement provides that decisions by the arbitrators are final and binding, (ECF No. 54 ¶ 18), and, under Pennsylvania law, arbitration awards from which no appeals are taken are final and binding, Novinger, 2008 WL 5378288, at *11. The undisputed record of evidence also shows that the Fagan Award is sufficiently specific to be capable of implementation. Fagan interpreted Section 4.2 of the Trust Agreement to mean that hourly fee rates for legal expenses incurred by the Employer Trustees do not have to be equal to or the same as the hourly fee rates incurred for legal expenses by the Union Trustees to be reasonable. The Fagan Award clearly provided that Fagan did not have the authority to provide the Union Trustees the relief they sought, i.e., the addition of language to the Trust Agreement that would equate the reasonableness of legal fees payable by the Fund to a fee cap on the rate of those fees.

With respect to the third requirement set forth in Trenton, the court is positively assured that the Fagan Award was intended to prohibit the Union Trustees' unilateral refusal to authorize the reimbursement of the Employer Trustees' legal expenses related to the Appointment Deadlock and this litigation unless those legal expenses were subject to hourly fee rate caps selected or required to be approved by the Union Trustees. The Trust Agreement provided that

the decision of the arbitrator would be **final and binding** on the parties and the Union Trustees did not appeal or otherwise challenge the findings of the Fagan Award. (ECF No. 54 ¶ 18.) Thus, the Fagan Award became a part of the Trust Agreement, which the parties knew governed their relationship. See Wilbur Chocolate, 1988 WL 33881, at *3–4.

In the Fagan Award, the arbitrator explained that the Trust Agreement must be modified, i.e., words added to the agreement, for him to grant the Union Trustees' request to impose an hourly fee rate cap on the legal fees. He rejected the argument that the legal fees incurred by the Employer Trustees and the Union Trustees had to be equal to be reasonable. Yet, the Union Trustees on several occasions after the issuance of the Fagan Award, and without the parties agreeing to any relevant modification of the Trust Agreement, attempted to impose caps on the hourly rates of the legal fees incurred by the Employer Trustees and payable by the Fund. Based upon the foregoing, the court is positively assured that the Fagan Award was intended to and did prohibit the Union Trustees' unilateral refusal to authorize the reimbursement of the Employer Trustees' legal expenses related to the Appointment Deadlock and this litigation unless those legal expenses were subject to hourly fee rate caps selected or required to be approved by the Union Trustees.

The Union Trustees argue, however, that the Fagan Award does not cover their subsequent unilateral refusal to authorize the reimbursement of the Employer Trustees' legal expenses related to the Appointment Deadlock and this litigation unless those legal expenses were subject to hourly fee rate caps selected or required to be approved by the Union Trustees because the dispute resolved by the Fagan Award concerned a $250 cap on the hourly rates, and their subsequent motions concerned $260 and $300 caps on the hourly rates of the legal fees. The court agrees with the magistrate judge on this issue. The magistrate judge explained that

"Fagan's holding, which was based entirely on the authority of the impartial umpire to make the requested changes, would not change with an altered fee limit of $260 per hour, $300 per hour or any other cap that the Union Trustees unilaterally attempted to impose." (ECF No. 68 at 19.) The facts of the dispute presently before the court are materially[10] the same as the facts of the dispute presented to Fagan, i.e., the Union Trustees attempted unilaterally to impose caps upon the hourly rates of the legal fees incurred by the Employer Trustees without any showing of how or why legal fees incurred above those caps were unreasonable or unnecessary. Under those circumstances, the court is positively assured that the Fagan Award was intended to prohibit the Union Trustees' subsequent unilateral refusal to authorize the reimbursement of the Employer Trustees' legal expenses related to the Appointment Deadlock and this litigation unless those legal expenses were subjected to a $260 and $300 cap selected by the Union Trustees.

The court finds that the undisputed evidence of record shows that: (1) the Fagan Award was final and binding on the parties; (2) the Fagan Award was sufficiently specific for implementation; and (3) there is no doubt that the Fagan Award was intended to cover the Union Trustees' unilateral refusal to authorize the reimbursement of the Employer Trustees' legal expenses related to the Appointment Deadlock and this litigation unless those legal expenses

---

[10]     The First Circuit Court of Appeals has explained that an arbitration award may be enforced where it "is both clearly intended to have a prospective effect and there is no colorable basis for denying the applicability of the existing award to a dispute at hand…." Derwin v. Gen. Dynamics Corp., 719 F.3d 484, 491 (1st Cir. 1983). If the court finds "**no material factual difference**** between the new dispute and the one decided in the prior arbitration that would justify an arbitrator's reaching a different conclusion" the court may enforce the arbitral award. Id. (emphasis added). Here, the court is positively assured that the Fagan Award was intended to have a prospective effect and prohibit the Union Trustees' subsequent refusal to authorize the reimbursement of the Employer Trustees' legal expenses related to the Appointment Deadlock and this litigation unless those legal expenses were subject to an hourly fee rate cap selected or required to be approved by the Union Trustees.

were subject to a $260 or $300 fee rate cap. Under those circumstances, the court may judicially enforce the Fagan Award without compelling the parties to arbitrate the matter.

The Trust Agreement, which included the final and binding Fagan Award, prohibited the Union Trustees from unilaterally refusing to authorize the reimbursement of the Employer Trustees' legal expenses related to the Appointment Deadlock and this litigation unless those legal expenses were subject to hourly fee rate caps selected or required to be approved by the Union Trustees. The only bases to challenge legal fees provided by the Trust Agreement are reasonableness and necessity. The court rejects the Union Trustees' argument that enforcement of the Fagan Award in this case forecloses them from challenging the reasonableness or necessity of any legal fees incurred by the Employer Trustees. The $250, $260, and $300 hourly fee rate caps unilaterally sought to be imposed by the Union Trustees—without more—did not show the Employer Trustees' legal fees were unreasonable or unnecessary. As Fagan explained, the hourly rates of the attorneys representing the Employer Trustees and the Union Trustees do not have to be equal to be reasonable. Under those circumstances, the Union Trustees violated the Trust Agreement when they unilaterally refused to authorize the reimbursement of the legal fees incurred by the Employer Trustees solely because the hourly rates for the attorneys' fees related to the Appointment Deadlock and this litigation were not capped at a rate (whether $260, $300, etc.) selected or required to be approved by the Union Trustees. The Union Trustees would read into the R&R a blanket prohibition on their ability to challenge the legal fees of the Employer Trustees. There is no such recommendation in the R&R. The Union Trustees are free to challenge the Employer Trustees' legal fees based upon the fees' reasonableness or the necessity for those fees. What the Union Trustees cannot do under the Fagan Award is unilaterally to pick an hourly fee rate cap for attorneys' fees and assert any legal fees presented

by the Employer Trustees for reimbursement in excess of that amount are per se unreasonable or unnecessary.

### ii.   **Legal Fees related to the Compensation Deadlock**

The parties' dispute with respect to the Compensation Deadlock requires a different analysis. The court finds that the Fagan Award did not address the Union Trustees' unilateral refusal to authorize any payment of the Employer Trustees' legal fees and expenses related to the Compensation Deadlock because the ERISA would preclude any such payment. At this stage, the parties have not yet submitted that deadlock issue to arbitration.

While the court agrees with the legal analysis set forth in the R&R with respect to the ERISA issue raised by the Union Trustees, (ECF No. 68 at 20), the court is constrained by the provision in the Trust Agreement, and the corresponding provision in the ERISA, requiring that deadlocks be resolved in arbitration. As the Third Circuit Court of Appeals has explained:

> Section 302(c)(5)(B) of the LMRA, 29 U.S.C. § 186(c)(5)(B), serves the important function of ensuring that a mechanism is available to break any deadlocks that arise between competing factions of trustees in the course of administering an employee benefit trust fund. As we have explained, the boards that oversee these trust funds must maintain equal representation of employers and employees, and frequent deadlocks between the two factions are a foreseeable result. To address potential stalemates, § 302 requires the two groups to agree on an impartial umpire to decide such dispute. 29 U.S.C. § 186(c)(5)(B). If they fail to agree within a reasonable period of time, either party may petition a federal district court for the appointment of such an impartial umpire.

Emp'r Trustees of W. Pa. Teamsters, 870 F.3d at 240.

The Trustees expressly agreed to submit deadlocked motions to arbitration; the Trust Agreement at issue in this case incorporates the requirements set forth in Section 302(c)(5)(B). The Union Trustees' motion to deny reimbursement for the Employer Trustees' legal fees incurred in relation to the Compensation Deadlock resulted in a new deadlock which was not subject to the Fagan Award; the issue raised was not presented to Fagan. Neither party petitioned

the court to appoint an arbitrator to address the issue. Because the parties agreed to submit deadlocked motions to arbitration and this dispute is not covered by the Fagan Award, the court cannot address the merits of the deadlock over the Employer Trustees' legal fees incurred in relation to the Compensation Deadlock at this time. Accordingly, the dispute about the Union Trustees' authority to refuse to reimburse the Employer Trustees for all the legal fees incurred by the Employer Trustees related to the Compensation Deadlock will need to be first brought before an arbitrator. The court, therefore, rejects the R&R to the extent the magistrate judge did not find that issue must first be submitted to an arbitrator.

### f.   Conclusion with respect to Objection 3 with respect to the enforcement of the Fagan Award (Count I)

The court will adopt the R&R of the magistrate judge to the extent she recommended the motion for summary judgment filed by the Employer Trustees be granted and the Fagan Award enforced with respect to the Union Trustees' unilateral refusal to authorize the payment of the Employer Trustees' legal expenses related to the Appointment Deadlock and this litigation unless those legal expenses were subject to hourly fee rate caps selected or required to be approved by the Union Trustees, and the motion for summary judgment filed by the Union Trustees with respect to the same issue be denied. The court rejects the R&R to the extent the magistrate judge found the Fagan Award prohibited the Union Trustees from refusing to authorize the reimbursement of any legal fees incurred by the Employer Trustees with respect to the Compensation Deadlock. That dispute must in the first instance be arbitrated. Summary judgment on that discrete issue will be granted in favor of the Union Trustees without prejudice for that issue to be submitted to arbitration under the provisions of the Trust Agreement. Judgment will be entered in favor of the Employer Trustees on Count I with respect to the Union Trustees' unilateral refusal to authorize the reimbursement of the Employer Trustees' legal

expenses related to the Appointment Deadlock and this litigation unless those legal expenses were subject to hourly fee rate caps selected or required to be approved by the Union Trustees. The court will enter an order enforcing the Fagan Award to the extent the Union Trustees violated the award by unilaterally refusing to reimburse the Employer Trustees for legal fees they incurred related to the Appointment Deadlock and this litigation unless those fees were subject to a $260 or $300 hourly fee rate cap or a higher hourly fee rate cap that had to be approved by the Union Trustees.

### 4.   <u>Objection 4</u>

In their fourth objection, the Union Trustees assert that the magistrate judge did not consider the Union Trustees' argument that they fully complied with the Fagan Award. The magistrate judge did, in fact, take note of the Union Trustees' compliance defense in the R&R. As discussed above, the magistrate judge properly found that the Union Trustees did not comply with the Fagan Award with respect to their unilateral refusal to authorize the reimbursement of the Employer Trustees' legal expenses related to the Appointment Deadlock and this litigation unless those legal expenses were subject to hourly fee rate caps selected or required to be approved by the Union Trustees. Accordingly, the Union Trustees' fourth objection will be denied.

### 5.   <u>Objection 5</u>

In the R&R, the magistrate judge stated that the Union Trustees "assert that ERISA privileges them to ignore the Fagan Award[.]" (ECF No. 68 at 16.) In their fifth objection, the Union Trustees argue that they did not make such an assertion. In their motion for partial summary judgment, the Union Trustees assert that their resistance to "unreasonable expenditure of excessive trust fund assets on legal expenses…are completely consistent with the Union

Trustees' fiduciary duties under ERISA and in no way, shape, or form constitute a violation of the Fagan Award." (ECF No. 52 at 7.) The Union Trustees, however, did not present any evidence to show that the hourly fee rates charged by the Employer Trustees' attorneys were unreasonable. The Union Trustees did, in fact, ignore the Fagan Award by unilaterally refusing to authorize the reimbursement of the Employer Trustees' legal expenses related to the Appointment Deadlock and this litigation unless those legal expenses were subject to hourly fee rate caps selected or required to be approved by the Union Trustees. Under those circumstances, the magistrate judge was correct that there is no ERISA-based argument that would justify the Union Trustees' unilateral refusal to authorize the reimbursement of the Employer Trustees' legal fees related to the Appointment Deadlock and this litigation unless those legal fees were subject to hourly fee rate caps selected or required to be approved by the Union Trustees. As noted above, whether the ERISA precludes the reimbursement of any of the Employer Trustees' legal fees incurred in connection with the Compensation Deadlock was not addressed by Fagan and, while this court would agree with the magistrate judge's analysis about the ERISA with respect to that argument, an arbitrator must address it in the first instance. Accordingly, the Union Trustees' fifth objection will be granted in part and denied in part.

### 6.  __Objection 6__

The Union Trustees argue that authorizing payment for legal expenses related to the Compensation Deadlock would violate the ERISA. In the R&R, the magistrate judge found that enforcement of the Fagan Award would not violate the ERISA and that the Union Trustees asserted their ERISA-based argument as a pretext for avoiding enforcement of the Fagan Award. In their sixth objection, the Union Trustees assert that their ERISA-based argument was not asserted as a pretext.

As mentioned above, the Union Trustees' unilateral refusal to authorize the reimbursement of the Employer Trustees' legal expenses related to the Compensation Deadlock on the basis that the ERISA precluded payment was not considered by Fagan; that dispute has not yet been submitted to arbitration. Whether the Union Trustees asserted their ERISA-based argument regarding the Compensation Deadlock in good faith or as a pretext is, therefore, a premature issue. The Union Trustees' sixth objection will be granted, albeit for different reasons than those set forth by the Union Trustees, and summary judgment will be entered in favor of the Union Trustees without prejudice for this issue related to the Compensation Deadlock to be submitted to arbitration.

### 7.  Objection 7

The Union Trustees assert that their refusal to authorize payment of certain legal fees incurred by the Employer Trustees is justified because Fund assets may only be used for reasonable and necessary expenses. They assert that using Fund assets to reimburse legal expenses related to the Compensation Deadlock would violate the ERISA. The magistrate judge found that reimbursing the Employer Trustees' legal expenses related to the Compensation Deadlock would not violate the ERISA. The Union Trustees object that the magistrate judge misstated the law.

As discussed above, the court will not consider the dispute over legal expenses related to the Compensation Deadlock because that dispute is the subject of a deadlock that has not yet been submitted to arbitration. Though, as discussed previously, the court finds no error in the magistrate judge's analysis on the matter, the court cannot adopt that aspect of the R&R and must reject it because that specific dispute must be submitted to arbitration. Accordingly, the Union Trustees' seventh objection will be granted, albeit for different reasons than those argued

by the Union Trustees. As noted previously, summary judgment on that discrete issue will be granted in favor of the Union Trustees without prejudice for that specific dispute to be submitted to arbitration.

### 8. Objections 8, 9, and 10

The Employer Trustees in Count II of the amended complaint allege that the Union Trustees breached their fiduciary duty[11] to the Fund by unilaterally refusing to authorize the reimbursement of the Employer Trustees' legal expenses related to the Appointment Deadlock and this litigation unless those legal expenses were subject to hourly fee rate caps selected or required to be approved by the Union Trustees and refusing to authorize the reimbursement of any of their legal fees with respect to the Compensation Deadlock. The magistrate judge in the R&R determined as a matter of law that the Union Trustees breached a fiduciary duty under the ERISA by violating the Fagan Award, the breach caused a loss to the Fund, and judgment should be entered in favor of the Employer Trustees with respect to Count II. The Union Trustees raise three objections, i.e., objections 8, 9, and, and 10, with respect to the breach of fiduciary duty claim.

To establish a breach of fiduciary duty under the ERISA, a claimant must show that "(1) a plan fiduciary (2) breache[d] an ERISA-imposed duty (3) causing a loss to the plan." Leckey v. Stefano, 501 F.3d 212, 225-26 (3d Cir. 2007); Sweda v. Univ. of Pa., 923 F.3d 320, 328 (3d Cir. 2019). Section 404(a)(1)(D) of the ERISA requires fiduciaries to act "in accordance with the

---

[11]     Here, the Employer Trustees in their breach of fiduciary duty claim asserted under § 1104 seek *equitable* relief, i.e., for the Union Trustees to restore the loss they caused to the Fund. The Employer Trustees, therefore, do not have a right to a jury trial under the Seventh Amendment to the United States Constitution with respect to their breach of fiduciary duty claim. Scalia v. WPN Corp., 417 F.Supp.3d 658, 667 (W.D. Pa. 2019) (holding that damages available under § 1104 of the ERISA for breach of fiduciary duty claims are equitable in nature, and, therefore, there is no right to a jury trial for those claims). The court may, therefore, dispose of the claim after consideration of the parties' summary judgment submissions.

documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). Where a plan subject to the provisions of the ERISA requires compliance with an arbitrator's decision, refusal to comply with an arbitrator's decision constitutes a breach of fiduciary duty. See Ironworkers Local No. 272 v. Bowen, 695 F.2d 531, 535 (11th Cir. 1983) (finding that "refusal to comply with an arbitrator's decision is automatically a breach of fiduciary duty" under §1104(a)(1)(D)).

In objection 8, the Union Trustees argue the undisputed evidence of record does not show that they *breached* their fiduciary duty to the plan by violating the Fagan Award. In objection 9, they argue that they did not *cause a loss* to the Fund. In objection 10, they argue that the Employer Trustees are improperly seeking *damages* in the breach of fiduciary duty claim. Each of these objections will be addressed below.

### a. Objection 8 with respect to breach

In their eighth objection, the Union Trustees assert that they complied with the Fagan Award and that the Employer Trustees, therefore, did not establish a necessary element for a claim of fiduciary duty. As discussed above, the magistrate judge correctly applied the law governing breach of fiduciary duty under the ERISA and concluded as a matter of law that the Union Trustees violated the Fagan Award by unilaterally refusing to authorize payment of the Employer Trustees' legal fees unless they were capped at hourly rates acceptable to the Union Trustees. Whether the Union Trustees breached their fiduciary duty to the Fund with respect to the reimbursement of fees for the Compensation Deadlock, however, is a premature issue that is not properly before this court because that issue is not addressed in the Fagan Award and it has not been submitted to arbitration in accordance with the Trust Agreement.

Section 3.15 of the Trust Agreement, which provides the mechanism for resolving a deadlock, states that "the decision and award of such umpire shall be final and binding upon the

parties." (ECF No. 45-1 at 25.) As discussed above, the Union Trustees violated the Fagan Award by unilaterally refusing to authorize the reimbursement of the Employer Trustees' legal fees unless those fees were subject to hourly fee rate caps selected or required to be approved by the Union Trustees, rather than addressing the reasonableness or necessity of those fees. The Union Trustees, therefore, failed to act in accordance with Section 3.15 of the Trust Agreement; thereby violating their fiduciary duty set forth in §1104(a)(1)(D). Under those circumstances, the eighth objection will be overruled because the magistrate judge correctly concluded that the Union Trustees breached their fiduciary duty by violating the Fagan Award. The eighth objection will be sustained to the extent the magistrate judge found that the Union Trustees breached their fiduciary duty to the Fund by unilaterally refusing to authorize reimbursement of any of the Employer Trustees' legal fees related to the Compensation Deadlock on the basis of a violation of the ERISA, an issue which is not properly before this court because it is not covered by the Fagan Award and has not yet been submitted to arbitration pursuant to the Trust Agreement.

### b.  <u>Objection 9 with respect to causing a loss</u>

The magistrate judge found that the Union Trustees caused a loss to the Fund by instigating the dispute underlying the instant litigation and thereby necessitating the use of Fund assets for related legal expenses. The Union Trustees object that they did not cause a loss to the Fund. Instead, the Union Trustees assert that they sought to save Fund assets by avoiding litigation and limiting legal expenses. The Union Trustees again assert that they did not violate the Fagan Award and that the instant litigation was unnecessary.

"To determine whether there has been a loss to the plan…'a comparison must be made between the value of the plan assets before and after the breach'" <u>Leckey</u>, 501 F.3d at 226 (quoting <u>Roth v. Sawyer-Cleator Lumber Co.</u>, 61 F.3d 599, 602 (8th Cir. 1995)); <u>see</u> <u>Kay</u>, 780 F.

Supp. at 1461-62; Leventhal v. M and Marblestone Grp. LLC, Civil Action No. 18-cv-2727, 2019 WL 1953247, at *6 (E.D. Pa. May 2, 2019). The Employer Trustees initiated this litigation because the Union Trustees breached their fiduciary duty to the fund by violating the Fagan Award and the Trust Agreement. As a result of that breach, the Fund reimbursed the legal expenses of the Union Trustees with respect to that aspect of this litigation. (ECF No. 59 ¶ 10.) The Union Trustees, therefore, caused a loss to the Fund in the amount of the legal expenses they were reimbursed by the Fund in connection with this litigation and with respect to the Appointment Deadlock. The overall loss to the Fund is expected to increase to the extent the Fund assets are used to reimburse the legal expenses incurred by the Employer Trustees with respect to the Union Trustees' unilateral refusal to authorize the reimbursement of their legal fees related to the Appointment Deadlock and this litigation unless those fees were subject to an hourly fee rate cap selected or required to be approved by the Union Trustees.

Based upon the foregoing, the magistrate judge correctly found that the Union Trustees caused a loss to the Fund by violating the Fagan Award. The Union Trustees' ninth objection will be denied with respect to legal expenses incurred because of their violations of the Fagan Award. The objection, however, will be sustained with respect to the legal fees incurred by the Employer Trustees with respect to the Compensation Deadlock because, as discussed above, that issue is premature.

### c.  Objection 10 with respect to damages

In their tenth objection, the Union Trustees assert that the magistrate judge failed to consider the argument that the Employer Trustees are seeking to recover losses incurred by a third party. The Union Trustees argue that an action for breach of fiduciary duty under 29 U.S.C. §

1132(a)(2) may only be brought on behalf of the Fund and may not be used to recover payments owed to a third party.

Section 502(a)(2) of the ERISA provides that "[a] civil action may be brought … by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title[.]" 29 U.S.C. § 1132(a)(2). 29 U.S.C. § 1109(a) provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

29 U.S.C. § 1109(a). See Leckey, 501 F.3d at 228 (finding that the proper remedy for a violation of 29 U.S.C. § 1132(a)(2) is to restore the assets removed from the plan, pursuant to 29 U.S.C. §1109). "Fiduciaries are personally liable for losses due to breach." Sweda, 923 F.3d at 328 (citing 29 U.S.C. § 1109)). Under § 1132(a)(2), "the plaintiff must assert a loss to the ERISA plan itself (not merely an individual claim for extracontractual damages)" and that "the plan takes legal title to any recovery, which then inures to the benefit of the participants and beneficiaries who were injured." Leckey, 501 F.3d at 217 (citing Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 147 (1985)).

Here, the Employer Trustees do not assert individual claims for damages or seek damages to be paid directly to their legal counsel. The Employer Trustees assert that the Fund itself has suffered losses related to the legal expenses incurred because of this litigation. Any damages in this case will be paid by the Union Trustees to the Fund itself to make good any losses caused by the Union Trustees' breach of fiduciary duty with respect to the Union Trustees' unilateral refusal to authorize payment from the Fund of the Employer Trustees' attorneys' fees unless

47

those fees were subject to hourly fee rate caps selected or required to be approved by the Union Trustees. Accordingly, the Union Trustees' tenth objection will be denied with respect to that conduct, but will be granted with respect to the Union Trustees' conduct relating to their refusal to authorize reimbursement of any of the Employer Trustees' legal fees for the Compensation Deadlock, an issue which first must be submitted to arbitration.

### d. Conclusion with respect to Objections 8, 9, and 10 with respect to the breach of fiduciary duty claim (Count II)

The undisputed evidence of record establishes each of the elements necessary to support a claim for breach of fiduciary duty under ERISA with respect to the Union Trustees' unilateral refusal to authorize reimbursement of the legal expenses of the Employer Trustees unless the hourly rates of the attorneys retained by the Employer Trustees were subject to hourly fee rate caps selected or required to be approved by the Union Trustees. The Union Trustees, therefore, must pay the Fund the amount of all losses resulting from those violations of the Fagan Award, i.e., the legal fees and expenses for which the Union Trustees were reimbursed by the Fund or which are reimbursed by the Fund to the Employer Trustees for legal fees and expenses they incurred in connection with the Union Trustees' unilateral refusal to authorize reimbursement unless those fees were subject to hourly fee rate caps selected or required to be approved by the Union Trustees.

The Employer Trustees seek additional relief in the form of an order removing the Union Trustees as fiduciaries. The court, in its discretion, may grant such relief under 29 U.S.C. § 1109. The court finds, however, that removal of the Union Trustees is not warranted in this case. Though the Union Trustees breached their fiduciary duties by violating the Fagan Award, the dispute underlying this action is a product of mutual infighting among the Trustees over the proper use of Fund assets. The Union Trustees did not demonstrate that they are incapable of

appropriately discharging their duties to the Fund. If the Trustees are truly concerned about the proper use of Fund assets, it is incumbent on both parties to cooperate and administer the Fund in a prudent and cost-effective manner.

**9.  The Union Trustees' Counterclaim with respect to the Employer Trustees' alleged breach of fiduciary duty**

The magistrate judge recommended that the court deny the Union Trustees' counterclaim without prejudice because the issues raised in the counterclaim relate to matters at issue in civil action number 19-388. As set forth above, the issues pending in civil action number 19-388 are now resolved, and the court will address the Employer Trustees' motion for summary judgment with respect to the Union Trustees' counterclaim.

The Union Trustees assert that the Employer Trustees committed a breach of the fiduciary duty imposed by Section 404 of ERISA, 29 U.S.C. § 1104(a)(1)(B). The Union Trustees argue that the Employer Trustees' effort to seek compensation for meeting attendance constitutes a breach of fiduciary duty as a matter of law. Section 1104(a)(1)(B) provides:

> **(a) Prudent man standard of care (1)** Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and … **(B)** with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims[.]

29 U.S.C. § 1104(a)(1)(B). The Union Trustees assert that the Employer Trustees did not act with prudence in pursing litigation to resolve the Compensation Deadlock because authorizing such compensation is not permitted under the Trust Agreement and would constitute self-dealing in violation of Section 406 of ERISA, 29 U.S.C. § 1106. Section 1106 provides:

> **a) Transactions between plan and party in interest**: Except as provided in section 1108 of this title: **(1)** A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction

> constitutes a direct or indirect-- **(D)** transfer to, or use by or for the benefit of a party
> in interest, of any assets of the plan[.]

29 U.S.C. § 1106. The Union Trustees assert that payment to Trustees for attendance at Trustee

meetings constitutes the type of self-dealing prohibited by § 1106 and that legal fees incurred in

attempt to obtain such payments are also prohibited.

The Employer Trustees respond that compensation to certain eligible Trustees is

specifically permitted under 29 U.S.C. § 1108(c)(2), which provides:

> **(c) Fiduciary benefits and compensation not prohibited by section 1106**
> Nothing in section 1106 of this title shall be construed to prohibit any fiduciary
> from-- **(2)** receiving any reasonable compensation for services rendered, or for the
> reimbursement of expenses properly and actually incurred, in the performance of
> his duties with the plan; except that no person so serving who already receives full
> time pay from an employer or an association of employers, whose employees are
> participants in the plan, or from an employee organization whose members are
> participants in such plan shall receive compensation from such plan, except for
> reimbursement of expenses properly and actually incurred[.]

29 U.S.C. § 1108. In the motion that resulted in the Compensation Deadlock, the Employer

Trustees sought compensation for eligible Trustees that is consistent with and permissible under

§ 1108(c). When the Trustees considered authorizing compensation for meeting attendance in

1989, the Fund's counsel submitted a request for guidance to the Department of Labor (the

"DOL"). The DOL responded with an information letter stating that reasonable compensation to

Trustees who are not full-time employees of participating employers is permissible under § 1108.

(ECF No. 51-2 at 200-202.) The DOL did not opine on the permissibility of that kind of

compensation under the Trust Agreement, but stated that compensation does not violate the

ERISA.

The reimbursement of the Employment Trustees' legal fees clearly would not be

prohibited. 29 U.S.C. § 1108(b)(2) provides:

**(b) Enumeration of transactions exempted from section 1106 prohibitions**
The prohibitions provided in section 1106 of this title shall not apply to any of the following transactions: **(2)** Contracting or making reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor.

29 U.S.C. § 1108. The introductory clause to § 1108 specifically permits the payment of legal fees notwithstanding the prohibitions set forth in § 1106. The ERISA itself does not bar the kind of compensation at issue here or the related legal expenses incurred by the Employer Trustees.

The Union Trustees also contend that the Employer Trustees violated their duty to act prudently by incurring legal expenses related to the Compensation Deadlock because the Trust Agreement clearly prohibits payment of compensation to Trustees. Although Zobrak concluded that the Trust Agreement does not permit that kind of compensation, counsel who drafted the text of the Trust Agreement testified that when he drafted that agreement he did not intend to change the provision of the Trust Agreement that authorized those kind of payments and the Union Trustees and Employer Trustees had continued to make those payments for a period of time. The Trustees' past practice, which the Union Trustees participated in, indicated that kind of compensation was permissible under the Trust Agreement. The Union Trustees did not present, and the court did not find, any authority suggesting that the Employer Trustees' effort to clarify the Trust Agreement via arbitration and subsequent litigation constitutes a violation of the duty of prudence imposed by the ERISA. No reasonable factfinder could find to the contrary. The Employer Trustees' motion for summary judgment, therefore, will be granted with respect to the counterclaim asserted by the Union Trustees.

## 10. <u>Attorneys' Fees</u>

Both parties request attorneys' fees in this case. (ECF No. 17 at 5; ECF No. 22 at 8.) The magistrate judge recommended that the court award attorneys' fees to the Employer Trustees.

(ECF No. 68 at 26.) Pursuant to 29 U.S.C. § 1132(g), a district court has discretion in a case filed under the ERISA to "allow a reasonable attorney's fee and costs of action to either party." See Hahnemann Univ. Hosp. v. All Shore, Inc., 514 F.3d 300, 310 (3d Cir. 2008). "A party seeking attorney's fees under [the] ERISA must show 'some success' on the merits." Templin v. Indep. Blue Cross, 785 F.3d 861, 863 (3d Cir. 2015). The Third Circuit Court of Appeals has explained:

> A party satisfies this requirement if a "court can fairly call the outcome of the litigation some success on the merits without conducting a 'lengthy inquir[y] into the question whether a particular party's success was 'substantial' or occurred on a 'central issue'." Id. Conversely, "[a] claimant does not satisfy that requirement by achieving trivial success on the merits or a purely procedural victory...." Id. (internal quotation marks omitted).

Id. (quoting Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 255 (2010)). Even if a fees claimant can show it obtained "some success on the merits," the district court has the discretion to grant or deny its request for attorneys' fees. Id. at 867. The court **must** consider the following factors to determine whether to exercise its discretion to grant a request for attorneys' fees:

> "(1) the offending parties' culpability or bad faith;
>
> (2) the ability of the offending parties to satisfy an award of attorney's fees;
>
> (3) the deterrent effect of an award of attorney's fees;
>
> (4) the benefit conferred upon members of the pension plan as a whole; and
>
> (5) the relative merits of the parties' positions."

Id. (quoting Ursic v. Bethlehem Mines, 719 F.2d 670, 673 (3d Cir. 1983)). One district court has explained:

> Commonly referred to as the Ursic factors, no single one is dispositive. Einhorn v. M.L. Ruberton Constr. Co., 720 F. Supp. 2d 639, 642 (D.N.J. 2010). Rather, the Ursic factors serve as flexible guidelines, which must be considered before a court, in an exercise of discretion, grants a fee applicant's request for attorney's fees and costs. Unisys Corp. Retiree Med. Benefits ERISA Litig. v. Unisys Corp., 579 F.3d 220, 239 (3d Cir. 2009). Moreover, such an award may be warranted, even when a fee applicant is unable to satisfy the totality of the Ursic factors. Fields v. Thompson

52

Printing Co., 363 F.3d 259, 275 (3d Cir. 2004) (explaining that "the <u>Ursic</u> factors are not requirements in the sense that a party must demonstrate all of them in order to warrant an award of attorney's fees ....").

<u>Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.</u>, No. CV 17-4600, 2019 WL 4635482, at *2 (D.N.J. Sept. 24, 2019).

While each party in this case achieved some success on the merits, the court—as discussed below—after consideration of the <u>Ursic</u> factors, declines to exercise its discretion to award attorneys' fees to either party.

### a.  <u>The offending parties' culpability or bad faith</u>

In this court's view, both parties are equally responsible for this litigation. The parties' penchant for litigation and seeming inability to cooperate in a constructive manner stands in stark contrast to their professed desire to conserve Fund assets. If the Trustees are truly concerned about the welfare of the Fund, they would be well served to try to resolve future disagreements in a less expensive and more prudent, constructive, and cost-efficient manner. This factor, therefore, is neutral in the court's assessment about whether either party is entitled to attorneys' fees in this case.

### b.  <u>The ability of the offending parties to satisfy an award of attorney's fees</u>

The court is not aware of any evidence that shows either party is unable to satisfy an award of attorneys' fees.

### c.  <u>The deterrent effect of an award of attorney's fees</u>

An award of attorneys' fees may have a deterrent effect on the parties' penchant for litigation. The court does not find, however, that either party acted in bad faith in pursuing this case. This factor is, therefore, neutral in the court's decision whether to grant an award of attorneys' fees to either party.

**d.   The benefit conferred upon members of the pension plan as a whole**

The Employer Trustees' success in this case confers a benefit upon the Fund because the Union Trustees must reimburse the Fund for losses caused by the Union Trustees' fiduciary breach. The Union Trustees succeeded on the issue whether the ERISA precludes the reimbursement of any of the Employer Trustees' legal fees incurred with respect to the Compensation Deadlock, although that issue may still be arbitrated. The court, therefore, finds this factor neutral in consideration of the parties' requests for attorneys' fees.

**e.   The relative merits of the parties' positions**

The Employer Trustees successfully proved that certain of the Union Trustees' conduct violated the Fagan Award and they breached their fiduciary duty to the Fund. The Union Trustees were successful in this litigation to the extent this court found—albeit for reasons other than the reasons set forth by the Union Trustees—that the Fagan Award did not address the issue whether the ERISA precludes the reimbursement of any of the Employer Trustees' legal fees incurred in connection with the Compensation Deadlock.[12] This factor, therefore, weighs against the court award attorneys' fees to either party in these cases.

**f.   Conclusion with respect to Attorneys' Fees**

Based upon the foregoing consideration of the Ursic factors, the court declines to exercise its discretion to award attorneys' fees to either party in this case. Most importantly, the court concludes that it is prudent and cost-effective for the parties to follow the procedures set forth in the Trust Agreement with respect to obtaining the reimbursement of attorneys' fees incurred in

---

[12]    The court in this opinion explained that the parties' dispute with respect to the Union Trustees' unilateral refusal under the ERISA to authorize the reimbursement of any of the Employer Trustees' legal fees incurred in connection with the Compensation Deadlock must in the first instance be submitted to arbitration.

litigating deadlocks. The court determined that the Union Trustees breached their fiduciary duty to the Fund by violating the Fagan Award and the damages are measured by the loss to the Fund, i.e., the dollar amount paid by the Fund to reimburse the Union Trustees for their attorneys' fees incurred in connection with their unilateral refusal to authorize reimbursement of the Employer Trustees' legal fees unless those fees were limited by hourly fee rate caps selected or required to be approved by the Union Trustees. The loss to the Fund is likely to increase because the Employer Trustees may seek reimbursement from the Fund for their attorneys' fees incurred in connection with the Appointment Deadlock and this litigation. The Union Trustees may challenge the Employer Trustees' attorneys' fees based upon their reasonableness and necessity, pursuant to the Trust Agreement. Any deadlock with respect to the reasonableness or necessity of those fees (other than a challenge that the fees should be subject to an hourly fee rate cap selected or required to be approved by the Union Trustees, which is precluded by the Fagan Award) must be submitted to an arbitrator, pursuant to the Trust Agreement. Once the Fund reimburses the Employer Trustees for those attorneys' fees, the Union Trustees must forthwith reimburse the Fund. Under those circumstances and in consideration of the <u>Ursic</u> factors, the court declines to award attorneys' fees to the Employer Trustees because it is prudent and cost-effective for the procedure set forth in the Trust Agreement to be followed by the Trustees

### D. **Conclusion with respect to civil action number 18-1112**

For the reasons set forth in the magistrate judge's report and recommendation, as supplemented and modified by this opinion, the Employer Trustees' motion for summary judgment will be granted in part with respect to Counts I and II of the amended complaint relating to the Union Trustees' unilateral refusal to authorize reimbursement of the Employer Trustees for their attorneys' fees incurred in connection with the Appointment Deadlock and this

litigation unless those fees are subject to hourly fee rate caps selected or required to be approved by the Union Trustees, and will be denied without prejudice with respect to the Union Trustees' conduct relating to reimbursement of any of the Employer Trustees' fees incurred in connection with the Compensation Deadlock. The Employer Trustees' motion for summary judgment will be granted with respect to the counterclaim asserted by the Union Trustees.

The Union Trustees' partial motion for summary judgment will be denied in part with respect to Counts I and II of the amended complaint relating to the Union Trustees' unilateral refusal to authorize reimbursement of the Employer Trustees for their attorneys' fees incurred in connection with the Appointment Deadlock and this litigation unless those fees are subject to hourly fee rate caps selected or required to be approved by the Union Trustees. The Union Trustees' partial motion for summary judgment will be granted with respect to the Union Trustees' refusal to authorize the reimbursement of any of the Employer Trustees' fees incurred in connection with the Compensation Deadlock.

## IV.    <u>Federal Rule of Civil Procedure 11 Sanctions</u>

Federal Rule of Civil Procedure 11(b)(1) provides:

(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

    (1)    it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

    (2)    the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

    (3)    the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery….

56

FED. R. CIV. P. 11(b)(1)-(3). One district court has explained:

> Rule 11 authorizes imposition of sanctions where any pleading, motion or other paper was presented for an improper purpose, e.g., "to harass or to cause unnecessary delay or needless increase in the cost of litigation." Landon v. Hunt, 938 F.2d 450, 452 (3d Cir.1991). Rule 11 sanctions are based on " 'an objective standard of reasonableness under the circumstances.' " Id. at 453 n. 3 (quoting Mary Ann Pensiero, Inc. v. Lingle, 847 F.2d 90, 94 (3d Cir.1988)); Ford Motor Co. v. Summit Motor Prod., Inc., 930 F.2d 277, 289 (3d Cir.1991) ("The legal standard to be applied when evaluating conduct allegedly in violation of Rule 11 is reasonableness under the circumstances").
>
> "Rule 11 is intended for only exceptional circumstances." Gaiardo v. Ethyl Corp., 835 F.2d 479, 483 (3d Cir.1987). A "district court must exercise discretion and sound judgment in dealing with the myriad methods with which lawyers may abuse the judicial process." Eavenson, Auchmuty & Greenwald v. Holtzman, 775 F,2d 535, 540 (3d Cir.1985).

Kuznyetsov v. W. Penn Allegheny Health Sys., Inc., No. CIV.A .10-948, 2011 WL 284620, at *2 (W.D. Pa. Jan. 25, 2011). Rule 11(c)(2) provides that a request for sanctions must be made as a separate motion, "i.e., not simply included as an additional prayer for relief contained in another motion." FED. R. CIV. P. 11, advisory committee notes to 1993 amendment.

In their summary judgment briefings in each case, the Union Trustees threaten to move for sanctions against the Employer Trustees, pursuant to Federal Rule of Civil Procedure 11. There is no separate motion for sanctions currently pending before this court, and, therefore, the court cannot consider whether sanctions are appropriate in this case. FED. R. CIV. P. 11(c)(2); see Morning Sun Books, Inc. v. Div. Point Models, Inc., 826 F.App'x 127, 171 (3d Cir. 2020); Unimaven, Inc. v. Texas TR, LLC, Civ. A. No. 17-12008, 2020 WL 5406162, at *14 n.20 (D.N.J. Sept. 8, 2020).

In any event, upon review of the record, the Union Trustees did not present evidence of misconduct by the Employer Trustees that would warrant sanctions. Instead, both parties aggressively defended uncompromising positions, attempting to characterize the conduct of the

other as unreasonable. Each party has accused the other of pursuing unnecessary litigation and both parties lament that they have been forced by the other to waste Fund assets as a result. As discussed above, both parties are equally responsible for the instant cases. The Trustees should focus their efforts on the preservation of Fund assets and work collaboratively to avoid timely and expensive litigation.

## V.   **Conclusion**

For the reasons set forth in this opinion, with respect to civil action number 19-388:

- the Employer Trustees' motion for summary judgment (ECF No. 32) will be granted in part and denied in part;

- the Union Trustees' motion for summary judgment (ECF No. 28) will be granted in part and denied in part;

- judgment will be entered in favor of the Union Trustees and against the Employer Trustees with respect to counts I through IV of the complaint and count V to the extent it seeks a declaratory judgment; and

- judgment will be entered in favor of the Employer Trustees and against the Union Trustees with respect to the Union Trustees' counterclaim; and

- civil action 19-388 will be closed.

For the reasons set forth in this opinion, the magistrate judge's R&R will be adopted in part, rejected in part, and supplemented as provided in this opinion and:

- the Employer Trustees' motion for summary judgment (ECF No. 46) will be granted in part and denied in part;

- the Union Trustees' partial motion for summary judgment (ECF No. 48) will be granted in part and denied in part;

- judgment will be entered in favor of the Employer Trustees with respect to Counts I and II (limited to the Union Trustees' unilateral refusal to authorize the reimbursement to the Employer Trustees of their legal fees related to the Appointment Deadlock and this litigation unless those legal fees are subject to hourly fee rate caps selected or required to be approved by the Union Trustees) and;

– the parties may submit to arbitration their deadlock dispute with respect to whether the ERISA precludes the Fund's reimbursement of any of the Employer Trustees' attorneys' fees and expenses related to the Compensation Deadlock;

– the Fagan Award will be enforced with respect to the Union Trustees' unilateral refusal to authorize the reimbursement of legal fees to the Employer Trustees related to the Appointment Deadlock and this litigation unless the legal fees were subject to hourly fee rate caps selected or required to be approved by the Union Trustees;

– judgment will be entered in favor the Employer Trustees with respect to the Union Trustees' counterclaim; and

– civil action number 18-1112 shall be closed.

An appropriate order and judgments will follow.

By the court,

Date: February 2, 2021

/s/Joy Flowers Conti
Joy Flowers Conti
Senior United States District Judge